[Cite as *Denvir v. Blewitt*, 2019-Ohio-187.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS DENVIR, | : | **O P I N I O N** |
| Appellee, | : | |
| - vs - | : | CASE NO. 2018-P-0023 |
| DEBORAH BLEWITT, MAYOR, VILLAGE OF WINDHAM, et al., | : | |
| Appellants. | : | |

Administrative Appeal from the Portage County Court of Common Pleas, Case No. 2016 CV 00953.

Judgment: Affirmed.

*John D. Latchney*, O'Toole, McLaughlin, Dooley & Pecora, 5455 Detroit Road, Sheffield, OH 44054 (For Appellants).

*Frank J. Cimino*, 250 South Chestnut Street, Suite 18, Ravenna, OH 44266 (For Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellants, Deborah Blewitt, Mayor Village of Windham, Eric Breiding, Chief of Police Village of Windham, and City Council, Village of Windham, appeal from the March 5, 2018 judgment of the Portage County Court of Common Pleas, setting aside appellee's, Thomas Denvir, termination and ordering his reinstatement to his prior position as a police officer. Finding no reversible error, we affirm.

{¶2}　The defendant in this underlying case, Joshua Ward, committed various criminal offenses beginning as a juvenile. In 2014, Ward was involved in a theft offense at a convenience store in Windham. The Windham Police Department ("WPD") officer involved in that matter was Trisha Fall. Three months later, Ward committed criminal trespassing at the same establishment. Officer Fall was involved in that matter as well. As part of her report, Fall referenced the fact that Ward suffers from schizophrenia. Ward was not sent to a juvenile detention center or placed in a safe house, but rather was released to his mother.

{¶3}　Ward was also involved in other citations with the WPD, including confrontations with his brother and assaults on others. In 2015, Ward threatened to kill a 15-year-old boy. The WPD officer involved in that matter was Scott Herns and the report was reviewed and approved by Chief Breiding. In May 2016, Ward got into an argument with a friend and was seen with a shotgun. That report, by WPD Officer Timothy Wilmington, also indicated Ward suffers from schizophrenia.

{¶4}　On June 5, 2016, Denvir, a part-time police officer with the WPD, responded to a theft in progress at True Value Store. The suspect was Joshua Ward, who was carrying a backpack. Denvir had no prior contact with Ward and was unaware that he suffers from schizophrenia. Dennis Mulhern, the owner of the store, observed Ward removing items and placing them in his backpack.

{¶5}　Upon his arrival, Denvir approached Ward and asked him if he had taken anything from the store. Denvir removed items from Ward's backpack, including an ax, duct tape, a knife, an LED key chain, a flashlight, and a chain lock. Denvir then

searched Ward and obtained two knives and a cell phone. The merchandise totaled $84.45.

{¶6} Ward alleged that the "voices in his head" made him take the items. Ward also said that he had stolen some "stuff" the day before. Ward inquired whether Denvir would drop any charges against him if he would give the stolen items back. Denvir believed that Ward's statement of "voices in his head" was an excuse for him not owning up to his acts.

{¶7} Denvir arrested Ward and placed him in the back of his cruiser while handcuffed. At the time of the arrest, Denvir indicated that Ward appeared "okay" and was compliant. As Denvir had no prior contact with Ward, he obtained Ward's name, social security number, birthdate, and address. The information was later verified by Ward's mother.

{¶8} At the station, Denvir placed Ward, who continued being compliant, on a bench and handcuffed him to the wall. Denvir began preparing the report and complaint. Denvir met with two other WPD officers, Kulig and Fall, who provided assistance with identifying the evidence and preparing the complaint. Unlike Denvir, Fall had prior contact with Ward and raised the issue of schizophrenia regarding Ward on several occasions. Kulig prepared the evidence log regarding Ward and the items taken. Denvir also contacted Chief Breiding to let him know that he was working on this case and to get approval to stay beyond the end of his shift. Chief Breiding gave Denvir permission.

{¶9} Denvir transported Ward to the Garrettsville Police Department ("GPD"). The store arrived to sign the complaint and his signature was notarized. Denvir

3

contacted the jail. However, the jail was full and was unable to take Ward. As a result, a summons was issued at the GPD where Ward signed a PR bond. It also gave him the court date and hearing. At that point in time, Ward was free to go. Denvir drove Ward home.

{¶10} Denvir was later disciplined and subsequently terminated from his employment with the WPD, City Council Resolution R-2016-35. On October 26, 2016, Denvir filed an administrative appeal pursuant to R.C. 2506.04 with the Portage County Court of Common Pleas against Mayor Blewitt, Chief Brieding, and City Council.

{¶11} On March 5, 2018, the trial court found that the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of reliable, probative, and substantive evidence as it pertains to Denvir's termination. The court set aside Denvir's termination and ordered his reinstatement to his prior position as a WPD officer. Appellants filed a timely appeal and raise the following assignment of error:

{¶12} "The trial court erred as a matter of law and/or abused its discretion in reversing Village Council's decision to terminate Denvir's employment."

{¶13} In their sole assignment of error, appellants mainly argue that the trial court erred in reinstating Denvir to his prior position as a police officer.

{¶14} "The standard of review for the court of common pleas of an administrative appeal is recognized in R.C. 119.12(M), which states in part:

{¶15} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial

4

evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶16} "'The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is *"more limited* in scope."'" (Emphasis *sic.*) *Henley v. City of Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147 * * * (2000), quoting *Kisil v. Sandusky,* 12 Ohio St.3d 30, 34 * * * (1984). 'The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence.' *Ashland v. Gene's Citgo, Inc.,* 10th Dist. Franklin No. 99AP–938, * * *, 2000 WL 423992 (Apr. 20, 2000). 'It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion.' *Board of Educ. of Rossford Exempted Village School Dist. v. State Bd. of Edn.,* 63 Ohio St.3d 705, 707 * * * (1992)." *Lifton v. Ashtabula Cty. Bd. of Health*, 11th Dist. Ashtabula No. 2015-A-0025, 2016-Ohio-1299, ¶14-16.

{¶17} Regarding this standard, the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶18}** In this case, Chief Breiding had prior knowledge of Ward's past criminal behavior and the fact that Ward suffers from schizophrenia, as reflected through police reports. In Ward's past run-ins with the law, including incidents where Ward threatened to kill a 15-year-old boy and "flipped out" with a shotgun, Chief Breiding never issued any type of pink slip referral in light of allegations made and/or prepared in officers' reports.

**{¶19}** The trial court accurately described and addressed the following in its March 5, 2018 judgment:

**{¶20}** "On June 5, 2016, [Denvir] was the responding officer to a theft in progress at True Value Store. The suspect was Joshua Ward. Mr. Ward was arrested without incident by [Denvir] and voluntarily made a statement regarding what had taken place, which his statements were memorialized by [Denvir] in his report. Mr. Ward made a statement regarding voices telling him to commit the instant offense. He also made a statement regarding other property stolen in an apparent attempt to not have charges brought against him. The items found in his possession were retrieved by [Denvir], photographed, and taken into evidence.

**{¶21}** "Mr. Ward was taken to the jail, placed in holding, and booked without incident. The record reflects that he was cooperative, compliant with demands, nonaggressive, nonviolent, and appropriately communicative. He was released on a P.R. Bond and driven to his home by [Denvir]. Overall, [Denvir] spent multiple hours with Mr. Ward and at no point was there an indication by his behaviors exhibited that Mr. Ward should have been 'pink slipped.'

{¶22} "The record reflects that Mr. Ward has a history of interactions with the Windham Police Department where the allegations were of a violent nature, included the threat of a firearm being used, a firearm possibly being in his possession, and with the responding officers' reporting knowledge of Mr. Ward having a schizophrenia diagnosis. The record reflects that at least one officer present at the police department on June 5, 2016, Officer Fall, was an officer who had taken a prior report on Mr. Ward and would have been familiar with his history. Her familiarity was evident from the record when she went into the holding area and spoke to Mr. Ward regarding how well he had been doing prior to that day, June 5, 2016. However, the record does not reflect that Officer Fall communicated her knowledge to [Denvir] or that [Denvir] had knowledge of any schizophrenia diagnosis and failed to act after receiving the information."

{¶23} Nevertheless, Denvir was suspended and ultimately terminated in his position as an officer with the WPD.

{¶24} Regarding the incident at issue, Chief Breiding was aware that Officer Kulig came in contact with Ward shortly before 3:00 p.m. on June 5, 2016 and that during the course of preparing the report, Denvir also asked Officer Fall to come in to assist in preparing the report and complaint. Both Officers Kulig and Fall were aware of the facts of the case and had direct contact with Ward. A holding cell video tape reveals that Fall engaged in a conversation with Ward. However, neither officer felt a need to seek a pink slip on Ward. Chief Breiding acknowledged that these officers were under the same obligation to evaluate Ward's mental health status.

7

{¶25} Denvir described his involvement with individuals as a police officer over 28 years. Denvir indicated if he had prisoners as compliant and cooperative as Ward, his job would be "easy." Denvir stated that no one at WPD had ever brought Ward to his attention as someone to watch out for. Unaware of Ward's schizophrenia, Denvir believed that Ward's statement of "voices in his head" was an excuse for him not owning up to his acts and possibly as a way to get out of things. In Denvir's opinion, nothing made him feel as though Ward needed to be evaluated by a doctor. There was also no evidence of any fear on the GPD officers' part in relation to allowing Ward to be released out into the community.

{¶26} The record establishes that the trial court reviewed witness testimony, Ward's prior incident reports, the holding cell tape, and the discussion with Officer Fall. Based on the facts presented, the court did not err as a matter of law and/or did not abuse its discretion in reversing City Council's decision to terminate Denvir's employment with the WPD.

{¶27} For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs with a Concurring Opinion,
THOMAS R. WRIGHT, P.J., concurs in judgment only.

_____

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

8

{¶28} I concur in the decision to affirm the trial court's judgment, as there are no grounds to find that the trial court abused its discretion in reinstating Denvir to his position as a police officer with the Windham Police Department. I write separately, however, to clarify the applicable standard of review.

{¶29} The majority sets forth that "[t]he standard of review of the court of common pleas in an administrative appeal is recognized in R.C. 119.12(M)" and describes that the court can affirm an administrative order if it is "supported by reliable, probative, and substantial evidence and is in accordance with the law." *Supra* at ¶ 14-15.

{¶30} The administrative appeal to the Portage County Court of Common Pleas in this matter, however, was not taken pursuant to R.C 119.12. As has been held, a discharged city employee, including a police officer, may appeal a discharge decision "pursuant to R.C. 124.34 and 119.12, or under R.C. Chapter 2506." *See Senn v. Cleveland*, 8th Dist. Cuyahoga No. 84598, 2005-Ohio-765, ¶ 10. Denvir's Notice of Appeal to the Court of Common Pleas stated that the appeal to the court was taken "pursuant to section 2506 of the Ohio Revised Code."

{¶31} The appropriate standard of review for administrative appeals pursuant to R.C. 2506 provides: "If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The trial court properly

stated and applied this standard in reversing the decision to terminate Denvir's employment.

{¶32} With the foregoing clarification, I concur in the opinion of this court.