[Cite as *Routson-Gim-Belluardo v. Ohio Dept. of Edn.*, 2017-Ohio-2611.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

GLORIA J. ROUTSON-GIM-
BELLUARDO

    Plaintiff-Appellant

v.

OHIO DEPARTMENT OF
EDUCATION

    Defendant-Appellee

:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. CASE NO.   27148

T.C. NO. 16-CV-1264

(Civil Appeal from
  Common Pleas Court)

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___28th___ day of _____April_____, 2017.

. . . . . . . . . .

GARY A. REEVE, Atty. Reg. No. 0064872, P. O. Box 7866, Columbus, Ohio 43207
    Attorney for Plaintiff-Appellant

ADAM P. BESSLER, Atty. Reg. No. 0088764, Assistant Attorney General, 30 E. Broad
Street, 16th Floor, Columbus, Ohio 43215
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Gloria Routson-Gim-Belluardo ("Belluardo") appeals from a judgment of the

Montgomery County Court of Common Pleas, which affirmed the resolution of the Ohio

State Board of Education ("the Board") to revoke Belluardo's teaching license for

engaging in conduct unbecoming an educator; Belluardo is ineligible to reapply for a license until on or after February 9, 2018, and she is required to complete at least 12 hours of training in the area of administering student assessment prior to reapplying. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} The underlying facts, as found by the Board hearing officer in December 2015, are as follows:[1]

{¶ 3} Belluardo holds a five-year "professional education of the handicapped teaching license," which was issued in 2014. For the past 15 years, Belluardo has been employed by the Jefferson Township Local School District as an Intervention Specialist. As an Intervention Specialist, she taught students with "special needs" who had Individual Education Plans (IEPs). As part of those IEPs, Belluardo was required to complete quarterly progress reports.

{¶ 4} During the 2013-2014 school year, Belluardo was subject, for the first time, to the Ohio Teacher Evaluation System (OTES), a teacher assessment model created by the Ohio Department of Education. Half of her annual OTES score was comprised of the teacher's evaluation, and the other half was based on how much academic growth or progress her students had achieved during the school year. The students' academic

---

[1] In *Routson-Gim-Belluardo v. Jefferson Twp. Local School Dist. Bd. of Edn.*, 2016-Ohio-1265, 61 N.E.3d 914 (2d Dist.), Belluardo's appeal from the termination of her employment with Jefferson Township Local Schools, we set forth, in greater detail, the factual circumstances surrounding Belluardo's alleged wrongful conduct. Those circumstances are the same as those underlying the revocation of her teacher's license. We note that the evidence presented at the administrative hearing concerning the termination of Belluardo's employment and the transcript of that administrative hearing are also part of the administrative record in this case. *See* Exhibit 18.

growth or progress was measured by a Student Learning Objective (SLO) test that was administered to students both at the beginning and the end of the school year.

{¶ 5} Belluardo was responsible for developing and administering a SLO test to her students, some of whom had IEPs and some of whom did not. She attended SLO training for one day and had to report to a SLO committee for approval of her proposed SLO test.

{¶ 6} Belluardo used the San Diego Quick Assessment (SDQA) for her students' SLO test and as one tool to determine the quarterly progress reports for her students with "special needs." (Belluardo presented evidence that she had proposed SLOs that included reading comprehension and fluency components, but her approved SLO consisted only of the SDQA.) The SDQA consists of a list of ten words for each grade level (preprimer, primer, and first through eleventh grades); the word list does not change from test to test. The directions for the test state: "Begin with a list that is at least two or three sets below the student's grade level. Have the student read each word aloud on that list. Continue until the student makes three or more errors in a list." Three reading levels are identified: (1) independent – one error; (2) instructional – two errors; and (3) frustration – three errors.

{¶ 7} Belluardo administered the SDQA to her students in October 2013 and April 2014. For her students with "special needs," the SDQA was administered one or two additional times for quarterly reports. Prior to winter and spring breaks, Belluardo enlarged the words that her students with "special needs" had missed on the SDQA, printed them out, and sent the words home with those students to study. By the time Belluardo administered the SDQA to her students in April 2014, some of her students had

been assessed on some of the same words multiple times (October and one or two other times) and had also been given the words to study. According to the April 2014 SLO test results, all of Belluardo's students met or exceeded the expectation of one full grade level of academic growth or progress.

{¶ 8} In May 2014, the superintendent of the Jefferson Township Local School District placed Belluardo on unpaid administrative leave due to allegations that she "gave students the answers to tests, and that the resulting test scores directly impacted [her] performance evaluation." After providing Belluardo an opportunity to respond, the superintendent recommended termination of Belluardo's teaching contract.

{¶ 9} Belluardo requested a hearing before an impartial referee, pursuant to R.C. 3319.16. After a hearing, the referee found that the school board had failed to establish that Belluardo committed academic fraud regarding her implementation and scoring of the SLO test, and the referee recommended against terminating Belluardo's teaching license. The school board rejected the referee's recommendation, found "good and just cause," and terminated Belluardo's employment on December 8, 2014. On appeal, the Montgomery County Court of Common Pleas affirmed her termination, and we affirmed that judgment. *Routson-Gim-Belluardo v. Jefferson Twp. Local School Dist. Bd. of Edn.*, 2016-Ohio-1265, 61 N.E.3d 914 (2d Dist.).

{¶ 10} On March 30, 2015, the Ohio Department of Education issued a notice letter to Belluardo, informing her of the Board's intention to determine whether to limit, suspend, revoke, or permanently revoke her five-year "professional education of the handicapped teaching license." The notice included two allegations: (1) that Belluardo inappropriately administered a SLO test to her seventh grade students by giving students an advantage

on the test by providing word lists to the students in advance of the test and/or practiced the test with students, and (2) that Belluardo falsified a final SLO report/score for a student who allegedly did not take the year-end test. Belluardo requested a hearing, which was held on August 25-26, 2015.

{¶ 11} On December 17, 2015, the hearing officer found that the falsification allegation was not proven, but that the Department proved that Belluardo had engaged in "conduct unbecoming an educator" when she gave words to her students to study prior to being tested on some of those same words on the SLO test she administered to them. The hearing officer concluded "[a]cademic fraud occurred when Ms. Belluardo provided her students with words that were on the SLO test to study prior to the SLO test being administered."

{¶ 12} The hearing officer further found that Belluardo "made false or misleading statements with regard to this educational matter." The hearing officer noted that Belluardo's "testimony about her actions changed throughout the investigation." Specifically, Belluardo provided inconsistent statements about whether she followed the directions of the SDQA, whether she sent word lists home with students, whether students were tested on the words that were sent home, and whether word lists were sent home only with her special education students or all students.

{¶ 13} Finally, the hearing officer found that Belluardo's actions involved the school community "as the scores she reported on the SLO she administered effect [sic] the district's ratings and placed the school district in a situation of having to determine the proper level of growth for her students so the students would be assured of receiving educational services based on their levels."

{¶ 14} The hearing officer recommended that Belluardo's teaching license be revoked and that she be ineligible to reapply for a license for two years. The hearing officer reasoned: "While the Department recommended a five (5) year period before being able to reapply for her license, this Hearing Officer, in weighing Ms. Belluardo's age in five (5) years and the fact that it cannot be conclusively determined that her actions were a result of her intention to improve her own score on the OTES, a two (2) year period seems more reasonable." The hearing officer further recommended that Belluardo attend and successfully complete, at her own expense, 12 hours of training, approved by the Department, on administering student assessments.

{¶ 15} Belluardo filed objections to the hearing officer's report and recommendation. On February 9, 2016, the Board overruled Belluardo's objections and adopted the hearing officer's recommendations. Belluardo appealed the Board's order to the Montgomery County Court of Common Pleas, pursuant to R.C. Chapter 119. The trial court affirmed the Board's resolution. Belluardo appeals from the trial court's decision, raising one assignment of error.

## II. Analysis

{¶ 16} In her sole assignment of error, Belluardo claims that the trial court "abused its discretion in not reversing the decision" of the Board. She states that "[a]ll probative evidence in the instant case points to Belluardo['s] having done nothing wrong, and therefore nothing that constitutes 'conduct unbecoming' a teacher."

{¶ 17} "Under R.C. 119.12, when a decision of a state board is appealed, a court of common pleas must decide whether the board's order was 'supported by reliable, probative, and substantial evidence and is in accordance with law.' " *Spitznagel v. State*

*Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14, quoting R.C. 119.12. The trial court must give deference to the board's resolution of factual conflicts unless they are clearly unsupportable. *Jackson v. Ohio Dept. of Rehab. & Corr.*, 2d Dist. Montgomery No. 22580, 2009-Ohio-896, ¶ 18.

{¶ 18} An appellate court's review is more limited than that of the trial court. In reviewing the trial court's determination on whether the order was supported by reliable, probative, and substantial evidence, the appellate court is limited to determining whether the trial court abused its discretion. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992), citing *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988). An abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} When reviewing whether the Board's, or the trial court's, order was in accordance with the law, however, an appellate court's review is de novo. *Spitznagel* at ¶ 14.

{¶ 20} R.C. 3319.31(B)(1) permits the state board of education to "suspend, revoke, or limit a license that has been issued to any person" for "[e]ngaging in an immoral act, incompetence, negligence, or conduct that is unbecoming to the * * * person's position." The Ohio Administrative Code sets forth factors for the state board of education to consider when evaluating "conduct unbecoming" under R.C. 3319.31(B)(1). Ohio Adm.Code 3301-73-21(A). They include:

(1) Crimes or misconduct involving minors;

(2) Crimes or misconduct involving school children;

(3) Crimes or misconduct involving academic fraud;

(4) Making, or causing to make, any false or misleading statement, or concealing a material fact in a matter pertaining to facts concerning qualifications for professional practice and other educational matters, or providing false, inaccurate, or incomplete information about criminal history or prior disciplinary actions by the state board or another professional licensing board or entity;

* * *

(8) Any other crimes or misconduct that negatively reflect upon the teaching profession, including sanctions and/or disciplinary action by another state educational entity or another professional licensing board or entity.

Ohio Adm.Code 3301-73-21(A).

{¶ 21} An uncodified portion of 2007 H 190, which amended R.C. 3319.31 effective November 14, 2007, required the Educator Standards Board to recommend to the State Board of Education a code of conduct for educators. The code of conduct was to address persons who are licensed by the State Board of Education and to include recommendations regarding conduct that is inappropriate for educators and suggested disciplinary actions for each type of misconduct.

{¶ 22} The Licensure Code of Professional Conduct for Ohio Educators was adopted by the State Board of Education in March 2008. It provides "a guide for conduct in situations that have professional implications for all individuals licensed by the State Board of Education," and sets forth eight principles of behavior, including that "Educators

accurately report information required by the local board of education or governing board, state education agency, federal agency or state or federal law." The "Accurate Reporting" section of this Code includes a non-exhaustive list of "conduct unbecoming," which includes: "Falsifying, intentionally misrepresenting, willfully omitting or being negligent in reporting information regarding the evaluation of students and/or personnel."

{¶ 23} The trial court found that the Board's resolution was supported by reliable, probative, and substantial evidence, and was in accordance with the law. It reasoned:

> * * * Given the evidence in the record, the State Board acted reasonably in finding that Appellant's conduct was unbecoming to her profession. During the hearing, Appellant testified that she cut out the words that her students missed and placed them in baggies with candy, which were then given to her students to study over their winter and spring breaks. Appellant further admitted that some of the words that appeared on the final SLO assessment were sent home with her students to study prior to taking the assessment. Although Appellant testified that sending the entire word list home with her students would have been inappropriate, she failed to justify her actions in giving the students a partial list, and the State Board could have reasonably determined that her conduct was unbecoming to an educator. Although Appellant argues that her conduct does not rise to the level of conduct unbecoming, the Court finds that the State Board is entitled to deference in its determination of "conduct unbecoming" under R.C. 3319.31(B)(1), and the Court finds the Board's interpretation of "conduct unbecoming" to be reasonable with respect to

Appellant's actions.

Additionally, the Court finds unpersuasive Appellant's argument that the State Board failed to show a nexus between her conduct and her performance as a teacher. Although the Second District Court of Appeals has held that the State Board is not required to show such a nexus in order to take action with respect to an educator's license, it is clear that Appellant was being reprimanded for activities directly related to her duties as an educator, as her conduct occurred during school hours and involved giving her students the answers to a test prior to administering the test. Therefore, the Court finds that a nexus existed between Appellant's conduct and her performance as a teacher.

Additionally, with respect to Appellant's arguments regarding the school district's allegedly deficient implementation of the SLO assessment tests, the Court finds that Appellant is attempting to "obscure" the issue. The Court is persuaded by the Appellee's argument that "[w]hile the district could have done things differently if it had more resources, this is irrelevant. The district and the SLO committee approved the valid SLO created by Belluardo. Belluardo alone is at fault and being disciplined for providing her students the answers to the test prior to them taking the test." The sole issue before the Board, and therefore the sole issue before the Court, was whether Appellant's conduct supported the revocation of her teaching license, and the District's SLO creation and administration processes are irrelevant to this determination. Moreover, it was clear from the testimony

presented that although her SLO assessment was approved by the district, Appellant failed to comply with the proper procedures in administering the assessment, and the Court agrees with the Hearing Officer that Appellant "either did not understand how to administer a SLO or she understood and was trying to improve her own scores." Therefore, the Court is not persuaded by the Appellant's argument that her conduct is attributable to the school district's allegedly deficient implementation of the SLO tests during the 2013-2014 academic year.

Furthermore, with respect to Appellant's argument that the State Board failed to prove that she intended to give her students an advantage on the SLO test, the Court finds this argument to be without merit. R.C. 3319.31(B)(1) provides that the State Board may revoke a person's license where the person has "[e]ngag[ed] in * * * conduct that is unbecoming to the * * * person's position," and there is no mention of the educator's intent as being relevant to this inquiry. Moreover, Appellant has not cited any statutes or case law to support the proposition that the State Board must prove an educator's intent before taking action under R.C. 3319.31(B). Although the Hearing Officer took into consideration the fact that "it cannot be conclusively determined that her actions were a result of her intention to improve her own score on the OTES," the Hearing Officer appropriately deemed this to be a "mitigating factor" in reducing the recommended suspension from five years to two years. Thus, the Court finds unpersuasive Appellant's argument that the State Board must prove her

underlying intent, nor is the Court persuaded by Appellant's argument that the State Board must show that she directly benefitted from her actions in order for the State Board to find that her actions constitute conduct unbecoming to the education profession.

(Citations omitted.)

{¶ 24} On appeal, Belluardo claims that the evidence did not support the Board's conclusion that she engaged in "academic fraud," which she claims is the only basis upon which the Board could find that she engaged in conduct unbecoming an educator. She argues that she received little assistance from the District concerning the creation of the SLOs and that she tried to adhere to the "SLO protocol that was new to the District and to her." She states in her appellate brief: "Belluardo administered the test required by the SLO committee's plan. Belluardo used the only reasonable measurement for giving her required quarterly IEP student progress reports regarding the SLO, i.e. she readministered the test. Finally, she gave her students study materials designed to help them progress towards the goal of the SLO – improvement on the test." Belluardo claims that she had "no logical alternative" to her allegedly unbecoming behavior, and her counsel asserted at oral argument that her actions were not intended to benefit her, an allegedly necessary element of academic fraud.

{¶ 25} Upon review of the record, we find no error in the trial court's conclusion that the Board's Resolution was supported by reliable, probative, and substantial evidence, and was in accordance with the law. First, the record does not support Belluardo's contention that she did "nothing wrong." Belluardo's SLOs consisted of one test, the SDQA, a reading test. The test measured the students' abilities to read words

correctly, not understand the words' meanings. Ms. Everidge-Frey, Director of the Office of Educator Effectiveness for the Ohio Department of Education, testified that the purpose of this type of assessment was to give the educator a rough idea of the student's starting level, and as the student reaches the "frustration level," to help the educator identify what difficulty the student was having decoding words. Everidge-Frey explained, "So we're supposed to use it to go back and look on kind of the phonics side and help [students] with whatever they're struggling with." (R. at 205.) Everidge-Frey testified that, instead of using the same words, she would have tried to find "the underlying problem, what it is that they're struggling with phonetically and go back and work on similar words in that area." (R. at 206.)

{¶ 26} Belluardo was aware that the words on the SDQA did not change and that the students would be presented with the same word lists when they were tested again in the spring to assess their academic growth. However, instead of providing words that were phonetically similar to those that the students had missed on the SDQA, Belluardo provided the exact words for students to study. The record reflects that by giving students the words that they had previously missed on the SDQA to study, Belluardo conflated word recognition (being able to correctly pronounce the word because the student recognized it) with word decoding (being able to correctly pronounce the word by recognizing sound-letter relationships). As a result, Belluardo's test did not accurately measure the improvement in her students' reading abilities.

{¶ 27} Belluardo argues that she did not intend to benefit herself by her actions, and thus her actions cannot constitute "academic fraud." However, as the trial court noted, R.C. 3319.31 does not require intent, and the phrase "conduct unbecoming"

encompasses a wide variety of conduct, including "misconduct that negatively reflect[s] upon the teaching profession." In addition, the Accurate Reporting section of The Licensure Code of Professional Conduct for Ohio Educators expressly includes negligent conduct in its definition of conduct unbecoming.

{¶ 28} Even accepting that Belluardo's aim in providing SDQA words to her students was to assist her students in improving their reading and not to improve her OTES score, the Board could have found that Belluardo's conduct still reasonably constituted "conduct unbecoming" an educator. By giving her students the exact words on the SDQA to study, Belluardo's conduct gave her students an unfair advantage, regardless of Belluardo's subjective intent. Moreover, as Superintendent Gates testified, by providing test words in advance of the test, Belluardo appeared to sanction "cheating" and thereby failed to be a good role model for students. Everidge-Frey also stated that Belluardo's actions could have given her students "a false sense of achievement," created difficulties for the students the following year (due to their reading abilities being less than the assessment reflected), and could have gotten the school district in trouble with the Ohio Department of Education.

{¶ 29} And, even if Belluardo did not intend to "cheat," she apparently did not recognize that her actions would invalidate her students' scores, despite her years of experience in administering assessments. Belluardo testified that she "didn't think it was going to be unfair, cheating or any of that because I just wanted them to learn the words that they missed." (R. at 277.) Yet, the reporting of inaccurate and artificially high reading scores could have affected the educational services that her students received. Her reporting of the subsequent SLO scores reasonably constituted negligence in

"reporting information regarding the evaluation of students."

**{¶ 30}** Finally, as to Belluardo's argument that she received little assistance from the District concerning the creation of the SLO and that she tried to adhere to the "SLO protocol that was new to the District and to her," we agree with the trial court's conclusion that this argument obscures the issue. Having submitted and obtained approval of a SLO test with the SDQA as the only assessment, Belluardo was obligated to administer the SDQA in a manner that produced valid, accurate results.

**{¶ 31}** Neither this court nor the trial court is comprised of professional educators. Nor, for that matter, do we have specialized experience in, for example, real estate or medicine or other professions or trades. When we are reviewing decisions from administrative agencies mandated to oversee their particular fields of interest, we generally consider the agency's interpretation of a statute it must administer, as long as the interpretation is reasonable. *See Sutton v. Ohio Dept. of Edn.*, 2017-Ohio-105, __ N.E.3d __, ¶ 30-31 (8th Dist.); *Orth v. Ohio Dept. of Edn.*, 10th Dist. Franklin No. 14AP-19, 2014-Ohio-5353, ¶ 16. Here, R.C. 3319.31 delegated the responsibility of regulating licensure to the Board, and the Board adopted rules pursuant to statute in the form of the Licensure Code and the Ohio Administrative Code. *See Orth* at ¶ 17.

**{¶ 32}** Based on our review of R.C. 3319.31, the Ohio Administrative Code, and the Licensing Code, we conclude that the Board's revocation of Belluardo's license was not contrary to law, and the trial court did not abuse its discretion in affirming the Board's decision.

**{¶ 33}** Belluardo's assignment of error is overruled.

**III. Conclusion**

**{¶ 34}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Gary A. Reeve
Adam P. Bessler
Hon. Dennis J. Langer