[Cite as *Jones v. Kent City School Dist. Bd. of Edn.*, 2023-Ohio-265.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| SHAWN JONES, | **CASE NO. 2021-P-0094** |
| Plaintiff-Appellant, | |
| - v - | Administrative Appeal from the Court of Common Pleas |
| KENT CITY SCHOOL DISTRICT BOARD OF EDUCATION, | Trial Court No. 2020 CV 00466 |
| Defendant-Appellee. | |

## O P I N I O N

Decided: January 30, 2023
Judgment: Reversed and remanded

*John F. Myers*, 234 Portage Trail, Cuyahoga Falls, OH 44221 (For Plaintiff-Appellant).

*Patrick O. Peters* and *Jackson E. Biesecker*, Jackson Lewis, P.C., Park Center Plaza 1, Suite 400, 6100 Oak Tree Boulevard, Cleveland, OH 44131 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiff-appellant, Shawn Jones, appeals from the judgment of the Portage County Court of Common Pleas, affirming defendant-appellee, the Kent City School District Board of Education's, non-renewal of Jones' limited teaching contract. For the following reasons, we reverse the decision of the lower court and remand for further proceedings consistent with this opinion.

{¶2} On April 22, 2019, Jones entered into a contract to teach at Kent City Schools for the school term of 2019-2020.

{¶3} On October 18, 2019, a meeting was held between Jones and Stanton Middle School Principal Anthony Horton and Assistant Principal Kathy Scott. Pursuant to a letter documenting that meeting, they discussed Jones' conduct of leaving the school building without notifying an administrator on six days in October as well as his failure to fulfil his duties on early release and in-service dates. Jones was suspended for three days without pay. A second letter was sent on January 14, 2020, from Assistant Superintendent Thomas Larkin, which documented January meetings at which the parties discussed Jones' absence from work on January 6, 2020, without properly informing administration or documenting the absence, leaving students unsupervised. As a result Jones was placed on "a full cycle OTES [Ohio Teacher Evaluation System] evaluation." Pursuant to Larkin's testimony at the nonrenewal hearing, at that time, he told Jones it was likely he would recommend nonrenewal at the end of the school year.

{¶4} At the nonrenewal hearing, Larkin testified that, pursuant to the Ohio Teacher Evaluation System Model, teachers who are being considered for non-renewal and have a limited contract "will participate in a minimum of three formal observations." OTES documents note that a formal observation consists of visiting during a class period or viewing a class lesson.

{¶5} An evaluation was completed on January 29, 2020, which consisted of an observation of Jones teaching within the classroom. A second observation was held during a distance learning teaching period on May 1, 2020. On May 15, an observation was conducted of a Google Meets session where the students "shar[ed] progress on their google sheets assignment." Jones was not present during this session, as he was on a medical leave, and the evaluation consisted of observing the students working on a

2

project Jones had designed. An invitation for a post-conference meeting on May 28th was sent to Jones, who did not attend.

{¶6} On May 19, 2020, a Kent Board of Education meeting was held pursuant to R.C. 3319.11(G)(3), at which the Board decided not to renew Jones' teaching contract "upon the recommendation of the Superintendent." Jones was advised of this decision, asked for the reasons for nonrenewal and was informed it related to those days he left early, failure to fulfill duties on an early release day and teacher work day, and his absence which left students unattended.

{¶7} Upon Jones' request, a nonrenewal hearing was held on June 30, 2020. Larkin testified and presented exhibits relating to Jones' termination, including the Collective Bargaining Agreement and Memorandum of Understanding.

{¶8} Pursuant to the CBA between the Kent City School District Board of Education and the Kent Education Association, a committee appointed by the Superintendent and KEA president will review and propose modifications in the teacher evaluation procedures every four years and any proposed modifications would be presented to the Superintendent and KEA for review and assessment. Under this provision, such procedures "shall exclusively govern the observation and evaluation of the members of the bargaining unit represented by the KEA and shall supersede the observation and evaluation procedures in R.C. 3319.11, .111, and .16."

{¶9} In April 2020, a Memorandum of Understanding was entered into by the Board and KEA, indicating the process to complete teacher evaluations for 2019-2020 in accordance with House Bill 197. It provided that for those teachers subject to an evaluation under the CBA, if all required observations were completed by March 16, 2020,

3

the evaluator shall complete the evaluation report by May 22, 2020, and if the required observations were not completed by that date, they would be conducted virtually. It provided that, based upon completion of such procedures, "all teachers subject to evaluation for the 2019-2020 school year shall be deemed to have evaluations complied with for purposes of R.C. 3319.11." Finally, it stated that the MOU "contains the entire agreement between the parties with respect to its subject matter and supersedes any prior agreements or understandings between the parties concerning the issues reflected in the foregoing provisions."

{¶10} At the nonrenewal hearing, Jones testified that he had mistakenly entered the wrong date of his absence on January 6 due to illness, which led to the incident where students were unsupervised. On the dates where he left school early, it was only by a few minutes and occurred as the students were leaving school. He had scheduled a May 11 observation period, but was hospitalized on that date with chest pain resulting from stress. His doctor excused him from work for the following three weeks, which resulted in his lack of presence at the May 15 observation and any related meetings.

{¶11} On June 30, 2020, the Board adopted a resolution affirming the decision not to renew Jones' contract. Jones appealed the decision of the Kent City Board of Education to the Portage County Court of Common Pleas, arguing that there was a lack of compliance with evaluation and observation requirements for nonrenewal pursuant to R.C. 3319.111.

{¶12} The lower court issued a judgment entry affirming non-renewal on August 18, 2021. Jones filed a motion requesting findings of fact and conclusions of law, which request was denied.

4

{¶13} Jones timely appeals and raises the following assignment of error:

{¶14} "The trial court abused its discretion in affirming the decision of the Kent City Schools Board of Education nonrenewing Appellant's Limited Contract."

{¶15} R.C. 3319.11(G)(7) governs appeals from the decision of a board of education to non-renew a teacher's limited contract. R.C. 3319.11(G)(7) provides:

> A teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas of the county in which the largest portion of the territory of the school district or service center is located, within thirty days of the date on which the teacher receives the written decision, *on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code.*
>
> Notwithstanding section 2506.04 of the Revised Code, *the court in an appeal under this division is limited to the determination of procedural errors and to ordering the correction of procedural errors and shall have no jurisdiction to order a board to reemploy a teacher, except that the court may order a board to reemploy a teacher in compliance with the requirements of division (B), (C)(3), (D), or (E) of this section when the court determines that evaluation procedures have not been complied with pursuant to section 3319.111 of the Revised Code* or the board has not given the teacher written notice on or before the first day of June of its intention not to reemploy the teacher pursuant to division (B), (C)(3), (D), or (E) of this section. Otherwise, the determination whether to reemploy or not reemploy a teacher is solely a board's determination and not a proper subject of judicial review and, *except as provided in this division, no decision of a board whether to reemploy or not reemploy a teacher shall be invalidated by the court on any basis*, including that the decision was not warranted by the results of any evaluation or was not warranted by any statement given pursuant to division (G)(2) of this section.
>
> No appeal of an order of a board may be made except as specified in this division.

(Emphasis added.)

{¶16} "A court of common pleas' scope of review is more limited under Chapter 3319 appeals than in standard administrative appeals." *Skilton v. Perry Local School Dist. Bd. of Edn.*, 11th Dist. Lake No. 2001-L-140, 2002-Ohio-6702, ¶ 16. "A court of

5

Case No. 2021-P-0094

common pleas, considering an appeal by a teacher under this statute, cannot reverse the board of education's decision on the merits or order reinstatement or reemployment of the teacher, unless particular procedures have been violated," including failure to conduct evaluations consistent with R.C. 3319.111 or failure to give proper notice. *Id.* at ¶ 18. An appellate court reviews the court of common pleas' decision for an abuse of discretion. *Id.* at ¶ 19.

{¶17} The evaluation procedures in R.C. 3319.111(E) require that the board of education of a school district "shall require at least three formal observations of each teacher who is under consideration for nonrenewal and with whom the board has entered into a limited contract * * *."

{¶18} Jones argues that the Portage County Court of Common Pleas erred by affirming the nonrenewal of his teaching contract given the Board of Education's failure to comply with the statutory provisions of R.C. 3319.11 and .111 for conducting teaching evaluations.

{¶19} It is first necessary to address the Board's assertions that both the trial court and this court lack jurisdiction over the arguments raised by Jones on appeal because they would require interpretation of the CBA and/or MOU.

{¶20} In general, "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter [raising a claim with the State Employment Relations Board] are exclusive." *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991), paragraph two of the syllabus. Where there is a collective bargaining agreement that provides for arbitration of claims,

6

courts lack jurisdiction to resolve such claims and they must be submitted to arbitration. *Calkins v. Adams Cty.*, 4th Dist. Adams Nos. 99CA673 and 674, 2000 WL 886425, *3 (June 15, 2000). "Even when the rights asserted by a plaintiff are created by state law, if the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement, the trial court lacks subject matter jurisdiction over the matter." *Crawford v. Kirtland Local School Dist. Bd. of Edn.*, 2018-Ohio-4569, 124 N.E.3d 269, ¶ 31 (11th Dist.). To determine jurisdiction over a claim asserted by a party to the CBA, the court must determine whether the party's claims "arise from or depend on the collective bargaining rights." *Staple v. Ravenna*, 11th Dist. Portage No. 2021-P-0070, 2022-Ohio-261, ¶ 15.

{¶21} In deciding the issue of jurisdiction, we must first address the applicable evaluation procedure. The parties present opposing arguments about whether the MOU requires application of the statutory teacher evaluation procedures under R.C. 3319.111 or whether the MOU is an addendum to the CBA which supersedes the statute. It is unnecessary, however, to resolve this dispute since we find that, under the terms of R.C. 3319.111, the statutory procedure cannot be superseded by a collective bargaining agreement. Since determination of the evaluation procedures is statutory and the application of the law is not dependent upon a collective bargaining agreement, the lower court had jurisdiction to hear this matter.

{¶22} Previously, the rights set forth in R.C. 3319.111 relating to teacher evaluations could be superseded by the provisions of a collective bargaining agreement. *Naylor v. Cardinal Local School Dist. Bd. of Edn.,* 69 Ohio St.3d 162, 165, 630 N.E.2d 725 (1994) (a collective bargaining agreement can specifically exclude the rights under

7

R.C. 3319.111); *Antram v. Upper Scioto Valley Local School Dist. Bd. of Edn.*, 3d Dist. Hardin No. 6-08-4, 2008-Ohio-5824, ¶ 8 ("[a] collective bargaining agreement may provide for different evaluation procedures than are required by R.C. 3319.111"). However, R.C. 3319.111 was subsequently amended and the statute effective on March 16, 2017, provided: "(H) Notwithstanding any provision to the contrary in Chapter 4117. of the Revised Code, the requirements of this section prevail over any conflicting provisions of a collective bargaining agreement entered into on or after September 24, 2012."

{¶23} The parties' CBA, which includes a provision stating that it "shall exclusively govern the observation and evaluation of the members of the bargaining unit represented by the KEA and shall supersede the observation and evaluation procedures in R.C. 3319.11, .111, and .16" was effective July 1, 2017.[1] The law in place when the CBA was entered did not permit it to supersede the statutory teacher evaluation requirements. *See Ross v. Farmers Ins. Group of Cos.*, 82 Ohio St.3d 281, 287, 695 N.E.2d 732 (1998) ("'[c]ontracts must be expounded according to the law in force at the time they were made; and the parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed part of the contract'") (citation omitted).

{¶24} As to the MOU, the same concerns arise. The MOU appears to have been issued as a result of H.B. 197, which provided various forms of relief due to COVID. H.B. 197, Section 17(M) provides: "Notwithstanding anything in the Revised Code to the contrary, the board of education of any school district that * * * had not completed an

---

1. The precise date the parties "entered into" the agreement is unclear as only portions of the CBA are present in the record. Nonetheless, the applicable provision (R.C. 3319.111(H)) has precluded avoidance of R.C. 3319.111's provisions through a CBA since 2012.

evaluation that was required under Chapter 3319. of the Revised Code for the 2019-2020 school year * * * may elect not to conduct an evaluation of the employee for that school year, if the district board determines that it would be impossible or impracticable to do so. If a district board elects not to evaluate an employee for the 2019-2020 school year, the employee shall be considered not to have had evaluation procedures complied with pursuant to section 3319.111 of the Revised Code * * *. The district board may collaborate with any bargaining organization representing employees of the district in determining whether to complete evaluations for the 2019-2020 school year." In other words, H.B. 197 permits some degree of bargaining about the completion/timing of evaluations. It does not, however, provide authority for changing the specific terms of the statutory evaluation procedure, such as the number of observations to be conducted, or otherwise prohibit application of R.C. 3319.111(H). Applying R.C. 3319.111(H) to the MOU, it would follow that interpretation and application of the MOU is also unnecessary and impermissible. Since the CBA and MOU cannot be utilized to determine whether Jones' termination was proper, the arbitration clause does not apply and consideration of whether the statutory requirements applied is properly before the courts.. Since there is no jurisdictional concern, and we have determined that R.C. 3319.111 may not be superseded by a collective bargaining agreement, we will now consider the merits of Jones' arguments relating to whether these statutory requirements were met for his evaluation process.

{¶25} Jones argues that the Board failed to comply with R.C. 3319.11 and .111 since it completed only two of three required "formal observations." He contends that the third observation "did not comply with the statutory requirements and OTES [Ohio

9

Teacher Evaluation System] method" since Jones was not present and the evaluator "merely virtually observed some of Jones' students working on the assignment Jones had presented during the second formal evaluation." He also argues that "[c]ontrary to the OTES Model the evaluator did not conduct pre- or post-conference meetings with Jones."

{¶26} The Board argues that it complied with the requirement to conduct three formal observations, noting that the OTES Model sets forth that there must be visitation of a class or viewing of a class lesson and observing students complete work "is a critical component of any teacher evaluation or observation." It also contends that "pre-conference and post-conference meetings with teachers are not required."

{¶27} "In resolving the instant appeal, we are guided by the standard that R.C. 3319.11 and 3319.111 are remedial statutes that must be liberally construed in favor of teachers." *Naylor*, 69 Ohio St.3d at 164, 630 N.E.2d 725. "Strict compliance with procedures [for non-renewal], not just substantial compliance is required." *Springer v. Bd. of Edn. Cleveland Heights-University Heights School*, 8th Dist. Cuyahoga No. 75939, 2000 WL 263367, *2 (Mar. 9, 2000), citing *Snyder v. Mendon-Union Local School Dist. Bd. of Edn.*, 75 Ohio St.3d 69, 72-73, 661 N.E.2d 717 (1996) (rejecting the trial court's finding that substantial compliance with R.C. 3319.111 was sufficient: "[w]e therefore hold firm to the simple, specific dictates the General Assembly enacted regarding the evaluation of teachers").

{¶28} R.C. 3319.11(E) provides that a teacher under a limited contract shall be considered reemployed at the expiration of the contract "unless evaluation procedures have been complied with pursuant to [R.C. 3319.111] and the employing board" gives the teacher notice of its intention not to reemploy the teacher. As observed above, R.C.

10

3319.111(E) provides that the board of education "shall require at least three formal observations of each teacher who is under consideration for nonrenewal and with whom the board has entered into a limited contract * * *."

{¶29} "R.C. 3319.11 and 3319.111 contemplate that the formal observations will result in evaluations, the results of which will be contained in a written report provided to the teacher. And R.C. 3319.112 identifies components of the teacher's performance to be evaluated and requires ratings of 'accomplished,' 'skilled,' 'developing,' and 'ineffective' to be assigned in assessing the teacher's performance." *Gucciardo v. Springfield Local School Dist. Bd. of Edn.*, 6th Dist. Lucas No. L-19-1276, 2020-Ohio-5038, ¶ 21. R.C. 3319.112 provides for the State Board of Education to set the standards-based framework for the evaluation of teachers which includes, inter alia, utilizing multiple evaluation factors, assignment of ratings, provision of a written report of the evaluation to the teacher, and "requires observation of the teacher being evaluated, including at least two formal observations by the evaluator of at least thirty minutes each." R.C. 3319.112(A)(3). It does not address specific requirements of such observations or other components such as conferences to be held in conjunction with the observations.

{¶30} Section 3319 does not define "formal observation" nor is there case law interpreting this term. Where statutory terms are undefined, generally "we afford the terms their plain, everyday meanings, looking to how such words are ordinarily used." *State ex rel. More Bratenahl v. Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, 136 N.E.3d 447, ¶ 12. However, pursuant to R.C. 1.42, "where a word or phrase has acquired 'a technical or particular meaning, whether by legislative definition or otherwise,' that word or phrase shall be construed accordingly." *State v. Whites Landing Fisheries, LLC*, 2017-

11

Ohio-4021, 91 N.E.3d 315, ¶ 21 (6th Dist.); *San Allen v. Buehrer*, 2014-Ohio-2071, 11 N.E.3d 739, ¶ 77 (8th Dist.) ("[w]ords and phrases that have acquired a technical or particular meaning * * * require 'a technical interpretation in the light of the statutory purpose'") (citation omitted).

{¶31} Here, the term "formal observation" is related to the specific process to be conducted by the school districts in evaluating teachers. The phrase "formal observation" does not generally appear in dictionaries. The formalities to be completed in the teacher evaluation process and the expectations as to what the statutory purpose was for teacher observations are particular to this field.

{¶32} In determining the meaning of this term, we refer to the procedures utilized within the state of Ohio for evaluating teachers. In the proceedings below, the parties introduced documents created by the Ohio Department of Education describing the OTES, Ohio Teacher Evaluation System. The system is described therein as a "model" for district teacher evaluation systems which was "created in response to" the statutory mandate to recommend model evaluation systems to the State Board of Education. *See Routson-Gim-Belluardo v. Ohio Dept. of Edn.*, 2017-Ohio-2611, 90 N.E.3d 180, ¶ 4 (2d Dist.) (the OTES is "a teacher assessment model created by the Ohio Department of Education").

{¶33} The OTES's description of the "formal observation process" states that "[o]bservations of teaching provide important evidence when assessing a teacher's performance and effectiveness" and notes that, "[a]s an evaluator observes a teacher engaging students in learning, valuable evidence may be collected on multiple levels." It describes "formal observations" as consisting of "a visitation of a class period or a viewing

12

of a class lesson" that "should be conducted for an entire class period, lesson, or a minimum of 30 minutes." Each formal observation is to be "analyzed by the evaluator using the *Teacher Performance Evaluation Rubric*." That rubric includes, inter alia, factors observed such as the teacher's demonstration of familiarity with the students' background knowledge, the teacher's ability to explain topics to ensure understanding, the quality of the teacher's instructional materials, the strategies used by the teacher, the teacher's rapport and communication with the students, feedback to students, and the monitoring of student behavior. It appears from the OTES that a "formal observation" could reasonably be construed as including observation of the teacher within the classroom since many of the evaluation factors relate to the teacher's ability to communicate, interact with, and teach the students.

{¶34} While observing the students performing work without teacher supervision may be part of an evaluation, the teacher's absence prevents a complete evaluation of the teacher's abilities and may inhibit the purposes of the requirement to conduct a formal observation. *See Snyder*, 75 Ohio St.3d at 73, 661 N.E.2d 717 ("[t]he purpose of evaluations is to assist teachers in getting better"). R.C. 3319.112(A)(3), in describing the standards to be developed by the State Board of Education, states that the system developed must "require[] observation of the teacher being evaluated, including at least two formal observations." It does not refer to observation solely of the students. Here, the evaluator observed students attending a Google Meet session to share their progress on a Google Sheets assignment. There was no teaching conducted during this period since Jones was not present due to his medical leave. While the Board contends that

13

observations are often conducted when lessons are more "student-centered rather than teacher-centered," this differs from the teacher being entirely absent.

{¶35} In addition to the fact that the observation was completed without Jones' attendance, it is also without dispute that no pre- or post-conferences were conducted in conjunction with the third formal observation, since Jones was on leave during the dates proposed to hold such meetings. The OTES contains a description of the "formal observation process," and states that, "the formal observation process consists of a pre-conference, classroom observation (and walkthroughs), and a post-conference. The pre- and post-conferences consist of meetings between the teacher and evaluator to establish areas to be evaluated and provide feedback about the teacher's performance. While the relevant statutory sections do not address pre- or post-conferences, these conferences are clearly set forth as part of the process for evaluations outlined in the OTES, which was established pursuant to R.C. 3319.112. Here, the third formal observation failed to comply with the requirements of OTES to conduct a pre- and post-conference as well as an observation of Jones' teaching.

{¶36} While it may not have been possible to observe Jones teaching a class or conduct the conferences before the evaluation deadline because he was out on medical leave from May 11 to June 1, 2020, this does not alleviate compliance with the requirements of R.C. 3319.111. *Skilton v. Perry Local School Dist. Bd. of Edn.*, 102 Ohio St.3d 173, 2004-Ohio-2239, 807 N.E.2d 919, ¶ 11 ("[a] teacher's medical leave of absence does not excuse a school board from complying with R.C. 3319.111").

{¶37} In reviewing the entirety of the circumstances, the factors to be evaluated in the teacher observations, and the purposes of such evaluations, and taking into

14

consideration the mandate that these statutes must be construed liberally in favor of teachers, we find that the Board was not in compliance with the procedure for completing the third portion of the formal observation process and did not satisfy the requirements for non-renewal of Jones' contract. By misapplying the law and failing to enforce the requirements for a formal observation, the trial court abused its discretion.

{¶38} Where a school board has failed to comply with the statutory teacher observation requirements, it has been held that this failure "constitutes a ground upon which a court reverses the board's decision not to re-employ" the teacher. (Citation omitted.) *Snyder* at 73; *Driver v. Jefferson Twp. Local School Dist. Bd. of Edn.*, 2d Dist. Montgomery No. 24795, 2012-Ohio-1570, ¶ 29 (decision ordering reinstatement was mandatory); *also Tulley v. Wickliffe City School Dist. Bd. of Edn.*, 11th Dist. Lake No. 95-L-014, 1996 WL 648743, *8 (July 12, 1996). *See* R.C. 3319.11(E) ("Any teacher employed under a limited contract * * * is, at the expiration of such limited contract, considered reemployed * * * unless evaluation procedures have been complied with pursuant to section 3319.111 of the Revised Code * * *. A teacher who does not have evaluation procedures applied in compliance with section 3319.111 of the Revised Code * * * is presumed to have accepted such employment unless such teacher notifies the board in writing to the contrary * * * and a written contract for the succeeding school year shall be executed accordingly."). In such circumstances, courts have ordered that the teacher be reinstated and awarded back pay from the time of non-renewal through the date of reinstatement and remanded for a determination of damages. *Snyder* at 73; *Koch v. Greenville City School Dist. Bd. of Edn.*, 2d Dist. Darke No. 1403, 1996 WL 697018, *7 (Dec. 6, 1996) ("Appellant is, therefore, ordered reinstated as a teacher, with back pay to

15

be paid from the date of nonrenewal. This case is reversed and remanded to the trial court for a determination of the amount of back pay due to Appellant"). Thus, we order that Jones be reinstated and that, on remand, the trial court determine the amount of back pay to be awarded from the date of his non-renewal.

{¶39} The sole assignment of error is with merit.

{¶40} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, affirming the Kent City School District Board of Education's non-renewal of Jones' limited teaching contract, is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.

16

Case No. 2021-P-0094