[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones v. Kent City School Dist. Bd. of Edn.*, Slip Opinion No. 2024-Ohio-2844.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2844

JONES, APPELLEE, *v.* KENT CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones v. Kent City School Dist. Bd. of Edn.*, Slip Opinion No. 2024-Ohio-2844.]**

*Civil law—R.C. 3319.11—R.C. 3319.111—When considering nonrenewal of a teacher's limited teaching contract under R.C. 3319.11(E), school board must conduct three observations of the teacher being actually engaged in teaching to comply with the teacher-evaluation procedures set forth in R.C. 3319.111(E)—Judgment affirmed and cause remanded.*

(No. 2023-0376—Submitted December 13, 2023—Decided July 31, 2024.)

APPEAL from the Court of Appeals for Portage County,

No. 2021-P-0094, 2023-Ohio-265.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, and DETERS, JJ., joined.  FISCHER, J., dissented

and would dismiss the appeal as having been improvidently accepted.

**BRUNNER, J.**

**{¶ 1}** Ohio teachers who are employed under a limited contract are entitled to certain statutory procedures before a school board may decide to discontinue their employment. *See* R.C. 3319.11 and 3319.111. School boards and teachers' unions are free to establish local standards for following the required statutory procedures, but school boards are still required to follow the mandatory procedures established by the General Assembly, R.C. 3319.111(A), and the statutory requirements prevail over any conflicting terms of a collective-bargaining agreement, R.C. 3319.111(H).

**{¶ 2}** Appellant, Kent City School District Board of Education ("the board"), was required under R.C. 3319.111(E) to provide appellee, Shawn Jones, with three formal observations before making the decision not to renew his limited teaching contract. The parties dispute whether the board's third observation in this case was sufficient, because it consisted only of the evaluator's attending a remote meeting of Jones's students, which Jones could not attend because of a medical condition. R.C. 3319.111(E) requires the board to conduct "at least three formal observations of each teacher who is under consideration for nonrenewal" of a limited contract. Because *Jones* was not observed during the evaluator's third observation, we conclude that the board did not comply with R.C. 3319.111(E), and we affirm the Eleventh District Court of Appeals' judgment ordering the board to reinstate Jones. We remand this matter to the Portage County Court of Common Pleas for purposes of calculating Jones's back pay.

## I. BACKGROUND

**{¶ 3}** Under R.C. 3319.111(E), school boards "shall require at least three formal observations" of any teacher employed under a limited contract if the school board is considering nonrenewal of that contract. A "limited contract" for teachers

is a contract for a term of up to five years. R.C. 3319.11(A)(2) and 3319.08(C)(3). A teacher employed under a limited contract is presumed to be reemployed for another term at the end of the existing contract; the teacher's employment can be nonrenewed only if the school board has complied with the evaluation procedures in R.C. 3319.111 and the superintendent recommends the teacher's nonrenewal in writing. R.C. 3319.11(E).

{¶ 4} Jones was hired by the board to teach during the 2019-2020 school year. Jones had previously taught in Kent City Schools for 20 years. He and the board entered into a limited contract for one school year, and Jones began teaching communications technology at Stanton Middle School in fall 2019.

{¶ 5} In October 2019, Jones was issued an unpaid three-day suspension for leaving the school building before the end of the school day on six days without notifying the administration and for failing to fulfill his duties on early-release days and teacher workdays. Jones admitted that he often left the building with the students and other teachers at 2:40 p.m. when the students were released, even though as a teacher, he was required to stay until 2:45 p.m. He also admitted that he left early on early-release days and teacher workdays but contended that he still completed his work.

{¶ 6} On Monday, January 6, 2020, Jones did not appear for work and did not appropriately schedule a substitute or notify his administrators that he would be absent. Jones was notified in a letter from the assistant superintendent, Thomas Larkin, that he would be placed on a "full cycle OTES evaluation" for his unscheduled absence on January 6, which left his class unsupervised.

{¶ 7} The "full cycle OTES" referred to in Larkin's letter to Jones was a reference to the Ohio Teacher Evaluation System, a model evaluation process developed by the Ohio Department of Education, which was the process used by the board to comply with R.C. 3319.111(E). The collective-bargaining agreement between the board and the teachers' union ("the CBA") provided for establishing a

committee to develop specific procedures to follow for teacher evaluations. And the board and the union apparently agreed to use the OTES model for this purpose.

{¶ 8} Jones submitted a letter to Larkin in response to the notice that he was being considered for nonrenewal. He explained that he was very ill on Sunday, January 5, when he checked into the system to request the day off and secure a substitute for January 6. He was notified by the system that a substitute teacher had picked up his request, but he did not realize that he had actually put in a substitute-teacher request for the following Monday, January 13. Jones did not realize the mistake until he returned to school on Tuesday, January 7, the day after his unscheduled absence.

{¶ 9} The board proceeded to conduct the three required observations. The first took place on January 29. An evaluator attended Jones's sixth-grade communications-technology class and observed Jones's teaching for approximately 40 minutes. Jones and the evaluator had met for a pre-observation conference on January 27, and following the observation, Jones received feedback from the evaluator.

{¶ 10} Before a second observation could be conducted, the process was disrupted by the COVID-19 pandemic. The General Assembly recognized the difficulties caused by the transition from in-person to remote learning and enacted 2020 Am.Sub.H.B. No. 197 ("H.B. 197") to allow school districts to forgo any evaluations required under R.C. Ch. 3319 if it was impossible or impracticable to complete them. School boards electing to forgo evaluations were required to reemploy those teachers. *See* H.B. 197, Section 17(M).

{¶ 11} The board did not elect to forgo its observations of Jones. In March 2020, it entered into a memorandum of understanding with the teachers' union ("the MOU") that allowed teacher observations to "be completed virtually through distance learning means in a manner agreed upon by the Assistant Superintendent and the [teachers' union] President." The MOU specified that the evaluator would

4

submit a written evaluation report by May 22 "[b]ased upon observation and walk-through data available." The MOU did not alter any other teacher-observation procedures, and if the board decided to not renew Jones's contract, it was still required under R.C. 3319.11(E) to provide Jones with written notice of nonrenewal by June 1.

{¶ 12} It is unclear from the record what efforts, if any, the board made to complete its observations of Jones after the first observation was conducted on January 29, but its second observation of Jones did not occur until May 1. Jones had a pre-observation conference with the evaluator, who then watched a video of a remote-learning period in which Jones was teaching his students. The evaluator noted that the observation lasted 30 minutes. Jones then had a postobservation conference with the evaluator, during which they discussed scheduling the next observation.

{¶ 13} The board's third observation of Jones was scheduled for another distance-learning session on May 11. However, Jones woke up that morning with chest pains and went to the hospital. He spent the day in the hospital and was medically excused from work by his doctor until June 1.

{¶ 14} On May 15, the evaluator attended a remote-learning session in which Jones's students met to discuss their progress on an assigned project. Jones was not present during this session.

{¶ 15} At a board meeting on May 19—before the deadline for the evaluator to submit her final report—the board considered the superintendent's recommendation to not renew Jones's contract. The board unanimously approved the nonrenewal recommendation, and Jones was notified of that decision in a letter dated May 20. On May 28, the evaluator submitted a final-summative-rating report regarding Jones's effectiveness as a teacher. The evaluator rated Jones at the overall highest level: "Accomplished."

**{¶ 16}** Jones exercised his right to a hearing before the board under R.C. 3319.11(E) and (G). Following the hearing, the board entered executive session and voted to affirm its decision not to renew Jones's contract.

**{¶ 17}** Jones appealed the board's decision to the Portage County Court of Common Pleas under R.C. 3319.11(G)(7). Nothing in the record indicates that Jones was required to exercise any separate grievance or appeal procedures through his contractual obligations under the CBA. Jones argued to the common pleas court that the board did not complete the required statutory process before deciding to not renew his contract, because the third evaluation did not involve a pre-observation or postobservation conference and the evaluator failed to observe Jones engaging his students in learning. The common pleas court issued a judgment entry affirming the board's nonrenewal decision. Jones appealed to the Eleventh District, which reversed the common pleas court's judgment.

**{¶ 18}** The court of appeals found nothing in the CBA, the MOU, or the OTES model that permitted the board to change the terms of the teacher-evaluation procedures that are statutorily required. *See* 2023-Ohio-265, ¶ 23-24 (11th Dist.). The court of appeals concluded that the evaluator did not conduct any observation of Jones's teaching during her attendance at the students' virtual meeting on May 15 and that the board therefore failed to comply with the requirements of R.C. 3319.111. 2023-Ohio-265 at ¶ 35 (11th Dist.).

**{¶ 19}** We accepted the board's appeal for discretionary review. *See* 2023-Ohio-1830. For the reasons that follow, we affirm the court of appeals' judgment and remand the matter to the common pleas court for calculation of Jones's back pay.

## II. ANALYSIS

### A. *Judicial review under R.C. 3319.11(G)(7)*

**{¶ 20}** Jones was entitled to judicial review of the board's nonrenewal decision under R.C. 3319.11(G)(7), which provides:

> A teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas of the county in which the largest portion of the territory of the school district or service center is located, within thirty days of the date on which the teacher receives the written decision, on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code.

{¶ 21} R.C. 3319.11(G)(7) limits judicial review "to the determination of procedural errors." Therefore, we are not concerned with the reasons behind the board's decision to not renew Jones's contract. We may examine only whether the board complied with the teacher-evaluation procedures required under R.C. 3319.111. *See Snyder v. Mendon-Union Local School Dist. Bd. of Edn.*, 75 Ohio St.3d 69, 73 (1996).

{¶ 22} The board argues that the CBA controls Jones's claims, thus precluding judicial review. However, the board does not fully develop or adequately support this contention. Moreover, the terms of R.C. 3319.11 "prevail over any conflicting provisions of a collective bargaining agreement." R.C. 3319.111(H).

### B. The required teacher-evaluation procedures under R.C. 3319.111

{¶ 23} The operative statutory language at issue in this case is found in R.C. 3319.111(E), which states that "the board shall require at least three formal observations of each teacher who is under consideration for nonrenewal."

{¶ 24} Jones argues that the board did not comply with this statute, because he was not present for the observation on May 15. Jones argues that a virtual session in which his students met to discuss their work on an assignment was not an observation of his teaching.

{¶ 25} In the appeals before the common pleas court and the court of appeals, the board asserted that it had complied with the CBA, the MOU, and the OTES model, arguing in part—and incorrectly—that the procedures for teacher evaluations set forth in those documents superseded the process required under R.C. 3319.11(E). The board argued in the courts below that it conducted three formal observations of Jones and that the relevant consideration was whether the third observation was, in fact, a "formal" one. The board continues to argue before this court that because the OTES permits a formal observation to be a "visitation of a class period or viewing of a class lesson," the evaluator did what was required under R.C. 3319.11(E) when conducting the May 15 observation.

{¶ 26} But it is the language of the statutes that control, not what the parties may have agreed to in the CBA, in the MOU, or by the adoption of the OTES model for teacher evaluations and observations. The plain language of R.C. 3319.111(E) requires three "observations of [the] teacher who is under consideration for nonrenewal." And this is without exception. *See Skilton v. Perry Local School Dist. Bd. of Edn.*, 2004-Ohio-2239, ¶ 11 ("[A] teacher's medical leave of absence does not excuse a school board from complying with R.C. 3319.111. To hold otherwise would ignore the clear language of R.C. 3319.111 . . . ."). It is undisputed that during the students' virtual session on May 15, the evaluator may have observed the students, but she did not observe Jones, i.e., the "teacher who [was] under consideration for nonrenewal," R.C. 3319.111(E).

{¶ 27} Further, we need not address whether the board's third observation was "formal" under R.C. 3319.111(E). Regardless of the formalities, Jones was not observed three times. The definition of "formal observation" that the board would have us adopt—a visitation of a class period or viewing of a class lesson—does not satisfy the statutory requirement that the *teacher* in question be observed.

{¶ 28} Our holding that the statutes at issue here require actual observation of the teacher teaching is nothing new. Previous versions of these laws have been

similarly worded, and we have explained that when a teacher evaluation requires "'[o]bservation of the teacher,' " it requires just that, *Farmer v. Kellys Island Bd. of Edn.*, 69 Ohio St.3d 156, 159 (1994), quoting former R.C. 3319.111(B). Therefore, setting aside any importance the word "formal" may have in otherwise explaining how teacher observations are to be conducted, we conclude that the board did not comply with R.C. 3319.11(E) and 3319.111(E), because it failed to conduct three observations of Jones teaching.

> The failure of the board to comply with the observation requirements of [R.C. 3319.111(E)] constitutes a failure to comply with the evaluation requirements of [R.C. 3319.11(E)]. Such a failure constitutes a ground upon which a court reverses the board's decision not to reemploy [the teacher who was under consideration for nonrenewal] under R.C. 3319.11(G)(7).

*Farmer* at 160.

{¶ 29} We are mindful that because Jones was medically excused from work by his doctor from May 11 through June 1, it was not possible for the board to observe him and make a decision about his reemployment before the June 1 deadline set forth in R.C. 3319.11(E). We also recognize the unique challenges and uncertainties that schools faced in spring 2020 as a result of the transition from in-person to remote learning occasioned by the COVID-19 pandemic. But we are bound to apply the unambiguous language of R.C. 3319.111(E). Therefore, in accord with our history of ordering reinstatement to enforce compliance with R.C. 3319.11(G)(7), we order the board to reinstate Jones. *See Snyder*, 75 Ohio St.3d at 73; *Naylor v. Cardinal Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 162, 169 (1994); *see also Farmer* at 160.

## III.  CONCLUSION

**{¶ 30}** We agree with the court of appeals that the common pleas court abused its discretion in affirming the board's decision to not renew Jones's limited contract when the board failed to comply with R.C. 3319.111(E)'s requirement that it first conduct three formal observations of Jones as the teacher being considered for nonrenewal.  We therefore affirm the Eleventh District Court of Appeals' judgment and, pursuant to R.C. 3319.11(E) and (G)(7), order the board to reinstate Jones.  We remand this matter to the Portage County Court of Common Pleas for further proceedings consistent with this decision, including calculation of Jones's back pay.

Judgment affirmed

and cause remanded.

_____

Milligan Pusateri Co., L.P.A., Daniel D. Eisenbrei, and Haley M. Walker; and Malarcik, Pierce, Munyer & Will, and Donald J. Malarcik, for appellee.

Jackson Lewis, P.C., Patrick O. Peters, and Jackson E. Biesecker, for appellant.

_____