[Cite as *Lifton v. Ashtabula Cty. Bd. of Health*, 2016-Ohio-1299.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JUDITH LIFTON, | : | **O P I N I O N** |
| Appellant, | : | |
| | | **CASE NO. 2015-A-0025** |
| - vs - | : | |
| ASHTABULA COUNTY BOARD OF HEALTH, | : | |
| | : | |
| Appellee. | : | |
| | : | |

Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CV 25.

Judgment: Reversed and vacated.

*Alexandria R. Heinonen,* Smith & Miller, 36 West Jefferson Street, Jefferson, OH 44047 (Appellant).

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Catherine R. Colgan,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Judith Lifton, appeals from the judgment of the Ashtabula County Court of Common Pleas, affirming the decision of appellee, Ashtabula County Board of Health ("the Board"), denying appellant's request for a variance to install an off-site septic system on her property, located in North Kingsville, Ashtabula County, Ohio. At issue is whether the Board's General Sanitation Requirements ("the

Requirements"), governing Household Sewage Disposal Systems, as written, apply to appellant's property and, if so, whether the Board erred in denying appellant's request for a variance. Because we hold the requirements do not apply to appellant's property, we need not reach the second issue. The matter is accordingly reversed and the Board's decision is hereby vacated.

{¶2} In 1981, appellant purchased two vacant lots on Overlook Drive, in North Kingsville, Ashtabula County, Ohio. She purchased the property at issue, designated Lot 141, and an additional lot in 1983. A small residence, referred to as "the brown house," is located on Lot 141. Each of these four parcels are contiguous to one another. Later, in 1988, appellant purchased an additional lot located at 7274 Pasadena; this lot included a residence referred to as "the gray house." Approximately two-thirds of the north border of the Pasadena property adjoins the South boundaries of two of the lots on Overlook. All lots are between 30 and 35 feet wide and between 96 and 120 feet long.

{¶3} When the gray house was purchased, it was in significant disrepair. Appellant and her partner renovated the home, which involved installing a septic system. Given the small size of the lot, appellant sought a variance, which the Board granted in 1991. After the renovations, appellant moved into the gray house, where she still resides.

{¶4} The Brown House had electricity and an outhouse. Appellant, however, wished to upgrade the residence; to this end, she temporarily tied the plumbing and sewer into the line servicing the Gray House. The Board, after receiving a complaint from a third party, inspected Lot 141 and the Brown House and found the property in

2

violation of several of the Requirements, one of which was appellant's sewer connection to the system servicing the Gray House. On November 13, 2013, the Board filed a complaint relating to the violations. Appellant subsequently sought a variance, pursuant to the Requirements, to install an additional off-lot septic system to service the Brown House.

{¶5} Appellant's request for a variance was based upon two alternative arguments. First, she sought a variance that would allow her to maintain the sewage connection tying the Brown House to the Gray House's off-lot septic system. Secondly, she proposed combining three of the five lots to increase the square footage of the property on which the Brown House was located. In doing so, the property would increase to 11,000 square feet.

{¶6} The Requirements, adopted in 2004, provide that lots created after November 1, 2004, must be at least two acres (approximately 43,500 square feet) in order to accommodate a septic system. The Requirements further mandate that lots created between 1978 and November 1, 2004, be at least 40,000 square feet. For purposes of the Requirements, "[t]he date a lot created shall be the date the deed or plat creating said lot is recorded with the Ashtabula County Recorder's Office." The Requirements do not specify any minimal size requirement to accommodate a household sewage disposal system for a lot created prior to 1978. It is undisputed that the deed for Lot 141 was recorded, and the lot was therefore created in 1918.

{¶7} After considering the merits of the forgoing arguments, the Board issued a ruling denying appellant's variance requests. With respect to the first argument, although evidence was presented that appellant would suffer economic harm in the form

of lost potential rent income, the Board concluded that appellant failed to establish that she would suffer an unusual and unnecessary hardship if the variance was not granted. Thus, the Board denied the variance based upon appellant's first request.

{¶8} Regarding the second argument, the Board noted that, even if appellant combined the three lots, that combination would result in an approximately one-quarter-acre lot. The Board consequently determined the combined lot would fall far short of the minimum lot-size requirements set forth in the Requirements. Under the circumstances, the Board concluded the lot would be too small to effectively support a home septic system. Appellant filed an appeal of the Board's decision with the Ashtabula County Court of Common Pleas.

{¶9} At the hearing, appellant argued the minimum lot-size requirements for septic systems set forth in the Requirements do not apply to Lot 141 because the lot was created prior to 1978. Alternatively, appellant argued that, even if the Requirements applied to Lot 141, a variance was warranted because application of the lot-size requirements would cause her unusual and unnecessary hardship; to wit, she would be unable to utilize the Brown House as a residence, which would reduce Lot 141's market value and eliminate potential rental income. Appellant produced expert testimony from George Hess, a civil engineer, concluding an off-lot discharge septic system could be effectively utilized on Lot 141 without any public or environmental risk or hazard. Appellant also called real-estate appraiser Dennis Huey, who testified, without a serviceable septic system, the market value of Lot 141 would decrease by $48,000.

4

{¶10} In response to appellant's arguments, the Board, via Ashtabula County Health Commissioner, Raymond Saporito, argued it enacted the minimum-size lot requirements to protect the public health; Mr. Saporito noted numerous sewage nuisances in Ashtabula County over the years that resulted from failed septic systems on smaller lots. Mr. Saporito conceded that the Requirements did not specifically apply to lots created prior to 1978; he still maintained, paradoxically, that such lots "would still be covered" under the Requirements for the Board to determine whether a system could be put on the lot. In any event, Mr. Saporito testified that granting the requested variance would defeat the spirit and intent of the Requirements and be contrary to the public interest.

{¶11} After the hearing, the trial court affirmed the Board's conclusions. Specifically, it determined that, "[a]lthough the appellant's lots, including the two with residential structures, were created prior to the adoption of the minimum lot-size requirements of the Health Department regulations, the Court finds that they are subject to the health department regulations governing septic systems." The court further determined the difficulties appellant faces were not special and the hardships she will endure were not unusual. It reasoned that "[e]very lot owner in this development who does not already have a septic system in place had the same limitation on developing their property and maximizing its potential value." Thus, the trial court concluded the Board's decision was not unconstitutional, illegal, arbitrary, or capricious.

{¶12} Appellant now appeals to this court, assigning four errors for this court's review. Her first assignment of error provides:

5

{¶13} "The trial court erred by finding that the Ashtabula County Board of Health Regulations applied to Lifton's property."

{¶14} The standard of review for the court of common pleas of an administrative appeal is recognized in R.C. 119.12(M), which states in part:

{¶15} The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶16} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is '*more limited* in scope.'" (Emphasis *sic*.) *Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence." *Ashland v. Gene's Citgo, Inc.*, 10th Dist. Franklin No. 99AP-938, 2000 Ohio App. LEXIS 1710 (Apr. 20, 2000). "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion." *Board of Educ. Of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). The phrase "abuse of discretion" is one of art, denoting a judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24.

6

{¶17}   Section 6.0 of the Requirements, effective November 1, 2004, governs "Household Sewage Disposal Systems." It provides:

> {¶18}   6.1 For purposes of Section 6 of this resolution:  The date a lot is created shall be the date the deed or plat creating said lot is recorded with the Ashtabula County Recorder's Office.
>
> {¶19}   6.2 For lots created after the effective date of this resolution:  No person shall install a home sewage disposal system for a single family dwelling on any lot created after the effective date of this resolution unless said lot is at least two (2) acres with suitable area and has at least 200 feet of road frontage.  The 200 feet road frontage on a dedicated, accepted and publicly maintained roadway is not required when a lot contains soils which are rated slight or moderate by the United States Department of Agriculture soil survey for Ashtabula County and a totally on-lot system can be installed.  Lot areas and frontages for two (2) and three (3) family dwellings shall be two (2) or three (3) times as large respectively as the area and frontage requirements under this subsection 6.2 for a single family dwelling.
>
> {¶20}   6.3 For lots created between 1978 and the effective date of this resolution:  No person shall install a home sewage disposal system for a single family dwelling on any lot created between 1978 and the effective date of this resolution unless said lot is at least 40,000 square feet with suitable area and has at least 200 feet of road frontage.  The 200 feet road frontage on a dedicated, accepted and publicly maintained roadway is not required when a lot contains soils which are rated slight or moderate by the United States Department of Agriculture soil survey for Ashtabula County and a totally on-lot system can be installed.  Two (2) or three (3) family dwellings shall not be permitted on said lot unless the lot meets the size requirements of subsection 6.2 of this resolution for two (2) or three (3) family dwellings.

{¶21}   Under her first assignment of error, appellant argues the plain language of Section 6.0 does not contemplate regulating lots created prior to 1978.  Because Lot 141 was created in 1918, appellant contends it is outside the scope of Section 6.0.  Thus, she maintains neither the Board nor the trial court was required to reach the issue

7

of whether she was entitled to a variance. Appellant therefore concludes the trial court erred in affirming the Board's decision.

{¶22} Alternatively, the Board argues appellant misinterprets Section 6.0. It asserts that even though Lot 141 was created in 1918, the so-called Brown House was not a pre-existing home, but merely an outbuilding. The Board notes that appellant, without a permit, installed plumbing and tied the Brown House into a sewage line servicing the Gray House. The Board asserts, only after appellant made these illicit upgrades, sometime in 1998, did the Brown House become a "dwelling" or "residence." Because such illicit upgrades were made after the Requirements were enacted, Lot 141 is subject to Section 6.0. We shall first address the Board's contention.

{¶23} The existence of a functional dwelling, residence, or home on a created lot does not trigger the minimal lot-size requirements set forth under Section 6.0. Rather, the minimal lot-size requirements are applicable based upon a respective lot's creation date. The Ashtabula County General Health District ("the District") could have conditioned the application of Section 6.0 upon the date or time at which a building or structure located on a lot becomes a functional dwelling. It did not and, as a result, appellee's argument is a misconstruction of the plain language of the regulation.

{¶24} Section 6.0 unequivocally omits all lots created prior to 1978 from its regulatory field. It is undisputed Lot 141 was created in 1918. And Health Commissioner Saporito appeared to acknowledge that lots created prior to 1978 were outside the ambit of Section 6.0 during the hearing on appellant's administrative appeal to the trial court. Somehow, however, he testified lots created prior to 1978 were still subject to "review" vis-à-vis installation of household sewage disposal systems, even

8

though he conceded Section 6.0, governing household sewage disposal systems, did not cover such lots. Such "review," however, is not provided for under Section 6.0 and, as a result, cannot form the basis for regulating household sewage disposal systems on lots created prior to 1978.

{¶25} At oral argument, however, counsel for the Board asserted the Requirements include a "catch all" provision, which allegedly placed lots created prior to 1978 within the regulatory scheme that existed between 1972 and 1978. This position, however, was neither advanced in the trial court nor argued in appellee's brief. Moreover, our review of the Requirements fails to disclose any such section or provision. Not only do the Requirements fail to include a "catch all" provision, Section 11.2 specifically states: "The adoption of this resolution shall repeal the 1972 Resolution titled 'Regulations Sewage Disposal Systems['] and the January 3, 1978 and October 12, 1983 Resolutions concerning household sewage regulations." Rather than allowing for a "catch all" that might operate to regulate plots created prior to 1978, the 2004 enactment abolished all prior regulations via its express repeal provision. We therefore conclude appellant's property is outside the scope of the Requirements currently in effect.

{¶26} We acknowledge the Requirements were enacted with the laudatory intent of protecting public health and safety. And, it is possible that the District, in enacting the Requirements, mistakenly believed it had some implicit authority to regulate the minimum lot size for household sewage disposal for lots created before 1978, even though it did not specifically include such authority in Section 6.0. It is also possible, however, given the large number of relatively small lots in Ashtabula County created

9

prior to 1978, that the District intended, by the omission, to permit such lots to engage in an otherwise "nonconforming use" and regulate them on a case-by-case basis using its authority to prosecute nuisances when necessary. We have no way of knowing why lots created prior to 1978 were not included within the scope of Section 6.0. What is clear, however, is the regulation unambiguously places such lots outside its regulatory scope; in effect, there are no minimal size requirements for the installation of household sewage disposal systems for lots created prior to 1978.

{¶27} Statutes or regulations which restrict the use of private property will be strictly construed and their scope cannot be extended to include limitations not clearly proscribed. *State ex rel. Spiccia, v. Abate*, 2 Ohio St.2d 129 (1965). An appellate court cannot interpret a statute or regulation, unless the statute is ambiguous. *Wetland Pres. Ltd v. Corlett*, 11th Dist. Ashtabula No. 2011-A-0034, 2012-Ohio-3884, ¶34. "An ambiguity exists if the language is susceptible to more than one reasonable interpretation." *In re Cvanciger*, 11th Dist. Lake No. 2014-L-095, 2015-Ohio-4318, ¶20.

{¶28} As previously indicated, Section 6.0 of the Requirements contains no ambiguities. We cannot, therefore, interpret the regulation and attempt to divine whether Section 6.0, as written, is consistent with the purposes and policies of the overall regulatory scheme. This is especially so when, as here, we must strictly construe the scope of the regulation. To accept appellee's construction would not only be inconsistent with the definite language of the regulation, it would fundamentally limit appellant's use of Lot 141. Such an outcome is contrary to public policy and established case law. We therefore hold, pursuant to the plain language of the regulation, Section 6.0 does not apply to Lot 141 because the lot was created prior to

10

1978. The judgment affirming the Board's decision is reversed and vacated. Appellant is therefore permitted to move forward and install a lawful, Ohio EPA approved off-lot household sewage treatment system, subject to the Board's oversight and authority to declare a dangerous condition a nuisance, pursuant to Section 2.0 of the Requirements.

{¶29} Appellant's first assignment of error has merit.

{¶30} Appellant's remaining assignments of error provide:

{¶31} "[2.] The trial court erred by finding that there was a preponderance of reliable, probative and substantial evidence in the record to support the decision of the Ashtabula County Board of Health denying appellant's request for a variance.

{¶32} "[3.] The trial court's enforcement of the Board of Health lot size requirements and upholding the Board's denial of Lifton's variance request has resulted in an unlawful taking of Lifton's property.

{¶33} "[4.] The Ashtabula County Board of Health failed to provide Lifton with equal protection of the law."

{¶34} Because our resolution of appellant's first assignment of error is dispositive of this appeal, appellant's remaining assignments of error are overruled as moot.

{¶35} For the reasons discussed above, the Ashtabula County Court of Common Pleas judgment is reversed and vacated.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

11