[Cite as *Matola v. Mathews Local School Dist. Bd. of Edn.*, 2025-Ohio-5717.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| ERIKA M. MATOLA, | CASE NOS. 2025-T-0021 |
| | 2025-T-0022 |
| Appellant, | |
| | Administrative Appeals from the |
| - vs - | Court of Common Pleas |
| | |
| MATHEWS LOCAL SCHOOL | |
| DISTRICT BOARD OF EDUCATION, | Trial Court Nos. 2022 CV 01272 |
| | 2022 CV 00905 |
| Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: December 22, 2025
Judgment: Affirmed

*Charles W. Oldfield*, Green Haines Sgambati Co., L.P.A., City Centre One, Suite 800, 100 Federal Plaza East, P.O. Box 849, Youngstown, OH 44503 (For Appellant).

*Matthew John Markling*, McGown & Markling Co., L.P.A., 1894 North Cleveland-Massillon Road, Akron, OH 44333 (For Appellee).

JOHN J. EKLUND, J.

{¶1} In this consolidated appeal, Appellant, Erika M. Matola, appeals the judgments of the Trumbull County Court of Common Pleas dismissing her appeals of decisions from Appellee, Mathews Local School District Board of Education ("the school board"), to terminate and to non-renew her limited teaching contract.

{¶2} Appellant raises two assignments of error. First, Appellant argues that the trial court erred when it dismissed her appeal of the school board's termination order. According to Appellant, both the trial court and the school board failed to defer to the statutory referee's credibility determinations. Second, Appellant argues that the trial court

erred when it dismissed her appeal of the school board's nonrenewal decision.  According to Appellant, the school board was required to formally observe her in the classroom, and a statutory exception did not apply.

{¶3}     Having reviewed the record and applicable law, we find that Appellant's assignments of error are without merit.  First, we find no abuse of discretion regarding the trial court's review of the school board's termination order.  The actions of the school board and the trial court were consistent with the governing law.  Second, the trial court properly found no procedural errors in the school board's nonrenewal of Appellant's contract.  The statutory exception at issue encompassed the formal-observations requirement.  Further, Appellant's suspension qualified as "leave" under that the common meaning of that term.

{¶4}     Therefore, we affirm the judgments of the Trumbull County Court of Common Pleas.

**Substantive and Procedural History**

{¶5}     During the 2020-2021 and 2021-2022 school years, the school board employed Appellant as an art teacher at Mathews High School in Trumbull County pursuant to a two-year limited contract.  In April 2021, the school board became aware of misconduct allegations against Appellant.

{¶6}     During the 2020-2021 school year, Students A and B were in Appellant's sixth-period art class.  Student B is Appellant's cousin.  Students A and B were friends for many years, but their relationship eventually became strained.  According to Student B, she and Student A dated for a period of time but broke up; Student A denies this.

Case Nos. 2025-T-0021, 2025-T-0022

{¶7} On April 21, 2021, Student A was given permission to leave Appellant's class to go to the principal's office. Student A instead went to the cafeteria and told Deputy Steven Smith, the school resource officer, that Student B had a vaping device in her possession. Deputy Smith and Student A went to Principal James Stitt's office, where Student A told him this information. Principal Stitt removed Student B from Appellant's classroom and escorted her to his office, where he and Deputy Smith questioned her. During the questioning, Principal Stitt went back to Appellant's classroom and retrieved Student B's backpack but left some of her belongings behind. Student B admitted to having the vaping device and was suspended from school for three days.

{¶8} Appellant subsequently obtained possession of Student B's belongings, at which time a handwritten note fell out. Appellant read the note, which was between Student B and her friend, Student C. The note discussed vaping, stating, in relevant part, that "[Appellant] does care, but we make it decrete [sic]." After reading the note, Appellant delivered it to the principal's office. According to Principal Stitt, he did not see the note until the following day.

{¶9} Later that day, Student A communicated with Student B's mother via text message and telephone. She denied involvement in Student B's suspension and stated that Appellant was going to be fired because she allowed vaping in her classroom. Student B's mother reported this information to Appellant, i.e., her cousin. Appellant, in turn, texted Principal Stitt about it. Principal Stitt communicated with Deputy Smith, and they commenced an investigation.

{¶10} On April 23, 2021, the school board placed Appellant on indefinite home assignment pending an investigation of potential misconduct.

Case Nos. 2025-T-0021, 2025-T-0022

{¶11} Principal Stitt, Deputy Smith, and Superintendent Russell McQuaide conducted the investigation from April 21, 2021, to approximately April 27, 2021. The investigation included interviewing and obtaining written statements from Students A, B, and C and five other students—Students H, D, G, E, and F.

{¶12} Most relevant here, Student A alleged that Appellant allowed Students A and B to vape in the art supply room; that Appellant allowed Student B to vape in front of her; and that Appellant used her own vape in front of the two students. Student A also alleged that Appellant used the words "f**k" and "c**t" in front of students. Student A took Principal Stitt and Deputy Smith to the art supply room and showed them a charger for a vaping device hidden on a bookshelf.

{¶13} Students B and H provided written statements alleging that Appellant allowed students to vape. Deputy Smith shredded Student H's initial written statement. According to Deputy Smith, however, he did so in good faith because it was not consistent with Student H's verbal statement.

{¶14} The investigation also included discussions with Appellant and with Student B's mother. Appellant denied all allegations of wrongdoing.

{¶15} On May 5, 2021, a pre-discipline/pre-termination meeting/conference was held. Superintendent McQuaide alleged that Appellant committed the following misconduct: (1) Appellant witnessed Students A and B use a nicotine vaping device in the art supply room and failed to report them; (2) Appellant used a nicotine vaping device in front of Students A and B in the art supply room; (3) Appellant witnessed Student H use a nicotine vaping device in the classroom and failed to report him; (4) Appellant should have known students were using vaping devices in her class, even if she did not

personally witness them using them; (5) Appellant improperly left her classroom unattended without authorization; and (6) Appellant improperly fraternized with and/or counseled Students A and/or B while in the art supply room.

{¶16} Following the meeting/conference, Superintendent McQuaide determined that Appellant committed the following misconduct: (1) Appellant allowed students to be on school premises and/or at school activities involving students while using tobacco/vaping products; (2) Appellant was on school premises and/or at school activities involving students while using tobacco/vaping products; (3) Appellant improperly fraternized with students; (4) Appellant failed to comply with all aspects of the Licensure Code of Professional conduct for Ohio Educators; (5) Appellant failed to comply with all aspects of the written rules and regulations as set forth by the school board; and (6) Appellant engaged in conduct amounting to (a) incompetency, inefficiency, dishonesty, insubordination, and discourteous treatment of the public; (b) acts of misfeasance, malfeasance, and nonfeasance; and (c) good and just cause for termination.

{¶17} On May 18, 2021, the school board passed a resolution to declare its intention to consider the termination of Appellant's contract. On the same date, the school board suspended Appellant without pay or benefits pending final action.

{¶18} On May 25, 2021, Appellant filed a written demand for a hearing before a referee. The referee held an evidentiary hearing over seven days in October and December 2021. The parties presented witnesses and exhibits, and a record of the hearing was taken. Following the hearing, the parties filed post-hearing briefs.

Case Nos. 2025-T-0021, 2025-T-0022

{¶19} Appellant remained suspended during the entire 2021-2022 school year. The school board did not conduct any formal observations of Appellant in the classroom during that school year.

{¶20} On April 20, 2022, the school board declared its intention not to renew Appellant's contract.

{¶21} On May 31, 2022, the school board held a meeting and passed a resolution affirming its intention not to reemploy Appellant.

{¶22} On June 13, 2022, the referee issued a 13-page, double-spaced report and recommendation in the termination matter. The referee concluded that the evidence was insufficient to establish good and just cause for Appellant's termination and recommended that Appellant be restored to her position. Most relevant here, the referee made the following findings: First, the referee found that the school's investigation was deficient in many respects, including the destruction of Student H's initial statement, the failure to include parents in interviews upon request, the failure to interview other students in Appellant's class, and "the assumption without any corroborating evidence that the charging device found in [Appellant's] art closet belonged to her rather than a student or other staff member." Second, the referee found that although Students A, B, and H had all provided written statements indicating that Appellant had witnessed students vaping, Students B and H subsequently retracted those statements and testified that they were not aware of any such activity. Third, the referee found that the evidence showed Student A's "written statement, testimony, and unsworn text messages and oral statements" to others "to be replete with inconsistencies and demonstrable untruths."

Case Nos. 2025-T-0021, 2025-T-0022

{¶23} On June 30, 2022, Appellant appealed the school board's nonrenewal order to the trial court (Case No. 2022 CV 00905).

{¶24} On July 26, 2022, the school board held a meeting and adopted an 85-page, single-spaced resolution rejecting the referee's recommendation in the termination matter.

{¶25} On August 10, 2022, the school board held a meeting and adopted an 89-page, single-spaced resolution terminating Appellant's contract. First, the school board accepted 35 of the referee's findings as being supported by a "preponderance of reliable, probative, and substantial evidence." However, the board stated that it rejected the referee's recommendation "based upon a different interpretation of the significance of those facts." Second, the school board rejected five of the referee's findings as being "against the preponderance of reliable, probative, and substantial evidence." In particular, the school board rejected all of the referee's findings summarized above. Third, the school board rejected 13 of the referee's conclusions as being "against the preponderance of reliable, probative, and substantial evidence." Fourth and fifth, the school board set forth numerous facts and conclusions that it stated were "supported by the preponderance of reliable, probative, and substantial evidence."

{¶26} On September 9, 2022, Appellant appealed the school board's termination order to the trial court (Case No. 2022 CV 01272).

{¶27} On November 2, 2022, the trial court consolidated Appellant's two appeals. On January 30, 2023, Appellant filed an amended complaint in the termination matter. Thereafter, the school board filed responsive pleadings, the record was filed, and the parties filed merit briefs.

{¶28} On March 28, 2025, the trial court filed a judgment entry dismissing Appellant's complaints. The trial court found that there was reliable, probative, and substantial evidence supporting the school board's termination order. The trial court also found that there were no procedural errors to correct regarding the school board's nonrenewal decision.

{¶29} On April 23, 2025, Appellant timely appealed both matters to this Court. On May 9, 2025, this Court consolidated the appeals for all purposes. Appellant raises two assignments of error.

### Contract Termination

{¶30} Appellant's first assignment of error states: "The trial court erred when it dismissed [Appellant's] R.C. 3319.16 appeal because both the trial court and the Board failed to defer to the referee's credibility determination."

{¶31} Appellant argues that the school board improperly "substituted its view of the credibility of the witnesses and evidence for that of the referee." She further argues that the trial court abused its discretion by deferring to the school board's credibility determinations rather than the referee's. According to Appellant, both the school board and the trial court *must* defer to the referee's credibility determinations.

### Standard of Review

{¶32} "A court of appeals reviews the lower court's determination of a R.C. 3319.16 appeal for abuse of discretion." *Ellsworth v. Streetsboro City School Dist. Bd. of Edn.*, 2019-Ohio-4731, ¶ 35 (11th Dist.). "'The phrase "abuse of discretion" is one of art, denoting a judgment exercised by a court, which does not comport with reason or the record.'" *Id.*, quoting *Lifton v. Ashtabula Cty. Bd. of Health*, 2016-Ohio-1299, ¶ 16 (11th

Dist.). "'An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.""" *Id.*, quoting *Denvir v. Blewitt*, 2019-Ohio-187, ¶ 17 (11th Dist.), quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.). "Absent an abuse of discretion on the part of the trial court, the court of appeals may not engage in what amounts to a substitution of judgment of the trial court in an R.C. 3319.16 proceeding." *Graziano v. Bd. of Edn. of Amherst Exempted Village School Dist.*, 32 Ohio St.3d 289, 294 (1987).

<u>The School Board's Authority</u>

{¶33} The first issue is whether the school board improperly rejected some of the referee's findings, including its credibility determinations.

{¶34} R.C. 3319.16 provides that a school board may not terminate a teacher's contract "except for good and just cause." The statute does not define that phrase; however, the Supreme Court of Ohio has defined it as involving a "fairly serious matter." *Hale v. Bd. of Edn., City of Lancaster*, 13 Ohio St.2d 92, 99 (1968).

{¶35} Before terminating a teacher's contract, the school board "shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration." R.C. 3319.16. The teacher may then file with the treasurer a written demand for a hearing before the school board or before a referee. *Id.* Where a referee conducts the hearing, the referee must file a report within ten days after the hearing. *Id.* "After consideration of the referee's report, the board, by a majority vote, may accept or reject the referee's recommendation on the termination of the teacher's contract." *Id.* "After a hearing by the

Case Nos. 2025-T-0021, 2025-T-0022

board, the board, by majority vote, may enter its determination upon its minutes." *Id*. The order of termination must state the grounds for termination. *Id*.

{¶36} In *Aldridge v. Huntington Local School Dist. Bd. of Edn.*, 38 Ohio St.3d 154 (1988), the Supreme Court of Ohio delineated "the respective responsibilities of the referee and the [school] board in the statutory termination process." *Id*. at 156. The Supreme Court explained that a school board's "decision to terminate a teacher's contract is comprised of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute" good and just cause. *Id*. at 157. According to the Court, "[t]he distinction between these two is important in understanding the respective roles of the school board and of the statutory referee in the termination process." *Id*. The Court noted that "[t]he General Assembly interposed a referee into teacher contract termination disputes by legislative enactment in 1971," which "indicates a legislative intent to inject a neutral party into termination disputes." *Id*. The Court determined that "[t]his intent is thwarted if the findings by a referee can be rejected without explanation by a school board which conducts no hearing and which does not see or hear any of the witnesses." *Id*. "On the other hand," the Court stated, "the ultimate responsibility for the school system lies with the school board," and the Court "detect[ed] no legislative intent to change that responsibility." *Id*.

{¶37} The Court further explained that "[t]he tension between the two (achieving some objectivity and preserving board authority) can be resolved by an analysis of the functions of the referee and the board." *Id.* at 157-158. "A referee's report consists of both fact-findings and a recommendation. The referee's primary duty is to ascertain facts." *Id*. at 158. "The board's primary duty is to interpret the significance of the facts.

Though the referee has the primary responsibility for findings of fact, the school board does have the right and the responsibility to review those findings." *Id*.

{¶38} After considering a "spectrum of possible standards," the Court held that "in teacher contract termination disputes arising under R.C. 3319.16: (1) the referee's findings of fact must be accepted unless such findings are against the greater weight, or preponderance, of the evidence; [and] (2) a school board has the discretion to accept or reject the recommendation of the referee unless such acceptance or rejection is contrary to law." *Id*. In addition, "in weighing the evidence, the board must give deference to the fact that it is the referee who sees and hears the witnesses." *Id*. Further, "[i]t is the responsibility of the board to indicate whether it rejected a referee's findings as being against the preponderance of the evidence or accepted the referee's factual determination but rejected the referee's recommendation based upon a different interpretation of the significance of those facts." *Id*. "[T]he board 'should, in the spirit of due process, articulate its reasons' for rejecting a referee's recommendation." *Id*., quoting *Graziano*, 32 Ohio St.3d at 293.

{¶39} Thus, contrary to Appellant's argument, a school board is not required to show complete deference to the referee's credibility determinations. Instead, as stated, "in weighing the evidence," a school board "must give deference to the fact that it is the referee who sees and hears the witnesses." *Aldridge*, 38 Ohio St.3d at 158. However, a school board has "the right and the responsibility" to review the referee's findings because the board has "the ultimate responsibility for the school system." *Id.* at 157; *see Wells v. Madison Local School Dist. Bd. of Edn.*, 1985 WL 7682, *3 (12th Dist. July 15, 1985) ("not only is it [the school board's] right to make an independent determination, but they are

required to do so"). "R.C. 3319.16 does not require the Board of Education to act merely as a rubber stamp for the Referee's decision." *Graziano* at 291. Therefore, a school board may reject the referee's findings if it determines that "such findings are against the greater weight, or preponderance, of the evidence." *Aldridge* at 158.

{¶40} In addition, the error in *Aldridge* occurred when the school board "failed to give an explanation of why it rejected the referee's findings." *Id.*; *accord Humphries v. Lorain City School Dist.*, 2017-Ohio-8429, ¶ 18 (9th Dist.). Thus, this Court and others have found no reversible error in cases in which a school board explained its reasons for doing so. *See, e.g., Ellsworth*, 2019-Ohio-4731, at ¶ 66 (11th Dist.); *Humphries v. Lorain City School Dist.*, 2019-Ohio-2263, ¶ 13-15 (9th Dist.); *Routson-Gim-Belluardo v. Jefferson Twp. Local School Dist. Bd. of Edn.*, 2016-Ohio-1265, ¶ 31 (2d Dist.); *see also Strohm v. Reynoldsburg City School Dist. Bd. of Edn.*, 1998 WL 151082, *4 (10th Dist. Mar. 31, 1998); *Stelzer v. State Bd. of Edn.*, 72 Ohio App.3d 529, 532 (3d Dist. 1991).

{¶41} In the present case, the referee issued a 13-page, double-spaced report and recommendation wherein he set forth several conclusory findings. The referee chose not to explain the bases for his conclusions or cite any portion of the record in support. As one example, the referee found that "[t]he evidence also showed [Student A's] written statement, testimony, and unsworn text messages and oral statements" to others "to be replete with inconsistencies and demonstrable untruths."

{¶42} By contrast, the school board adopted an 89-page, single-spaced resolution wherein it rejected five of the referee's findings as being "against the preponderance of reliable, probative, and substantial evidence." In each instance, the school board set forth the referee's applicable finding, explained its reasons for rejecting the finding, and cited

specific portions of the record in support. As an example, one of the board's findings states as follows:

> The Board rejects findings of the Referee that "the evidence also showed Student A's written statement, testimony, and unsworn text messages and oral statements to [Parent of Student B] and others to be replete with inconsistencies and demonstrable untruths" as such findings are against the preponderance of reliable, probative, and substantial evidence (Report at 6). In rejecting this finding, the Board, in the spirit of due process, articulates the Board's reasons for rejecting these findings as follows:
>
> 1. Student A's testimony corroborates the verbal and written statements provided to Principal James Stitt and SRO Smith on April 22, 2021 (Board Ex. 3, Bates 000005).
>
> 2. Principal Stitt and SRO Smith located the vaping device exactly where Student A described it would be in Teacher Matola's closet (J. Ex. 16; October 2021 Trp. 490-491 ).
>
> 3. Notwithstanding Teacher Matola's self-serving denial and Student B contradictory denials, no evidence discredits the truthfulness of Student A's testimony and statements regarding Teacher Matola vaping in front of Student B and Student A.
>
> 4. Student A never recanted any statements to Principal Stitt, SRO Smith, and/or Superintendent McQuaide (Trp. 349 ¶ 13-17).
>
> 5. Superintendent McQuaide's recommendation to terminate Teacher Matola were [sic] based on the compilation of evidence regarding the truthfulness of Student A's statements, the existence of vaping in classroom, and Teacher Matola leaving the classroom unattended (October 2021 Trp. 264-265).
>
> 6. While the Referee failed to find Student A's testimony and statements to be reliable or probative in nature despite Student A's consistency and credibility provided in the record, the Board does not.
>
> 7. While the Referee failed to find Principal Stitt, SRO Smith and Superintendent McQuaide's findings to be reliable and probative in nature despite their competence to independently ascertain the truthfulness of Student A's statements, the Board does not.
>
> 8. While the Referee fails to cite to the record or explain the Referee's findings, the Board does not.

9. While the Referee failed to find Student A's testimony credible, the Board does not.

10. The Board reincorporates by reference all the findings and conclusions of the Board as if fully rewritten herein.

{¶43} We find the school board's actions to be fully consistent with *Aldridge*.

<u>The Trial Court's Authority</u>

{¶44} The second issue is whether the trial court abused its discretion by applying an incorrect legal standard in reviewing the school board's termination order.

{¶45} The Supreme Court of Ohio has held that "[w]hile an appeal before the common pleas court pursuant to R.C. 3319.16 does not include a right to a trial *de novo*, . . . the clear statutory language does however empower the court to weigh the evidence, hold additional hearings and render factual determinations." *Graziano*, 32 Ohio St.3d at 293. "The Common Pleas Court may reverse an order of termination of a teacher's contract, made by a Board of Education, where it finds that such order is not supported by or is against the weight of the evidence." *Hale*, 13 Ohio St.2d at paragraph one of the syllabus. Thus, courts have held that "[i]f substantial and credible evidence is presented to support the charges of the board, and a fair administrative hearing is had, the reviewing court cannot substitute its judgment for the judgment of the administrative authorities." *Strohm*, 1998 WL 151082, at *4. Thus, the trial court, in reviewing the school board's termination order, is not required to show complete deference to the referee's credibility determinations.

{¶46} In its judgment entry, the trial court stated that it "very thoroughly reviewed the transcript of the proceedings in the administrative hearing, reviewed the exhibits, the referee's report, and the resolution terminating [Appellant's] conduct." The trial court

Case Nos. 2025-T-0021, 2025-T-0022

determined that "[g]iving all required deference to the Referee's report," there was "sufficient evidence in the record to support the school board's findings by a preponderance of the evidence that the improper conduct was committed, warranting a termination of [Appellant's] teaching contract for good and just cause, as is required under R.C. 3319.16." We find that the trial court utilized the correct legal standard in its review of the school board's termination order.

{¶47} The case that Appellant cites in support of her argument, *Hiss v. Perkins Local School Dist. Bd. of Edn.*, 2019-Ohio-3703 (6th Dist.), is distinguishable. In *Hiss*, a teacher and students gave testimony that was "often diametrically opposed." *Id*. at ¶ 158. The referee resolved the conflicts in favor of the students. *Id*. The school board adopted the referee's findings and recommendation and voted to terminate the teacher's contract. *Id*. at ¶ 135. On appeal, however, the common pleas court overturned the school board's termination order. *See id*. at ¶ 136-137.

{¶48} The Sixth District reversed, determining that "[i]n addition to using the wrong standard for determining whether good and just cause existed, the common pleas court failed to defer to the referee's resolution of conflicting testimony." *Id*. at ¶ 157. According to the appellate court, the common pleas court "is required to give due deference to the *administrative resolution* of evidentiary conflicts because, in a refereed hearing, it is the referee who sees and hears the witnesses testify and can best weigh their credible." (Emphasis added.) *Id*. The common pleas court, however, "based only on the transcript of the referee hearing," "discounted all of the students' testimony," "found [the teacher] wholly credible," and in so doing, "gave *no deference* to the referee's resolution of evidentiary conflicts." (Emphasis added.) *Id*. at ¶ 159, 160.

{¶49} *Hiss* is not analogous to the present case. In *Hiss*, the school board adopted the referee's findings and recommendation. *See id*. at ¶ 135. Thus, unlike the present case, the administrative resolution of the conflicting testimony was aligned. As explained above, a school board and a trial court have different legal obligations in a termination proceeding. In addition, a trial court's legal authority to overturn a school board's termination order is limited.

{¶50} Further, in *Hiss*, the common pleas court showed *no* deference to the referee's findings. *See id*. at ¶ 160. Here, both the school board and the trial court showed due deference. In particular, the school board expressly acknowledged the referee's credibility determination but explained, in detail, the reasons why it disagreed and cited the evidence upon which it relied. The trial court also expressly acknowledged that the referee's findings were entitled to deference but found that the evidence supported the school board's termination order. Therefore, we find no abuse of discretion in the trial court's review of the school board's termination order.

{¶51} Accordingly, Appellant's first assignment of error is without merit.

**Contract Nonrenewal**

{¶52} Appellant's second assignment of error states: "The trial court erred when it dismissed [Appellant's] appeal of the Board's decision to non-renew her limited teaching contract because the Board failed to comply with the evaluation requirements of R.C. 3319.11(E) and 3319.111(E) and because R.C. 3319.111(C)(2)(d)(i)'s exception to the evaluation requirement does not apply here."

{¶53} Appellant argues that the school board failed to comply with R.C. 3319.111(E), which requires "at least three formal observations" of a teacher under a

limited contract "who is under consideration for nonrenewal."  The school board argues that another statutory provision—R.C. 3319.111(C)(2)(d)(i)—excused it from that obligation.  Appellant counters that the exception only applies to the immediately preceding requirement in (C)(1) that a school board conduct an annual evaluation of each teacher.  According to Appellant, the exception does not apply to the formal-observations requirement in R.C. 3319.111(E).  Alternatively, Appellant argues that even if the exception applies, she was not "on *leave* from the school district" under that exception.  (Emphasis added.)

<u>Standard of Review</u>

{¶54}  R.C. 3319.11(G)(7) provides, in relevant part, that "[a] teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas . . . on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code."  The common pleas court "is limited to the determination of procedural errors and to ordering the correction of procedural errors." *Id*.  The common pleas court has "no jurisdiction to order a board to reemploy a teacher, except that the court may order a board to reemploy a teacher . . . when the court determines that evaluation procedures have not been complied with pursuant to section 3319.111 of the Revised Code or the board has not given the teacher written notice on or before the first day of June of its intention not to reemploy the teacher." *Id*.  "Otherwise, the determination whether to reemploy or not reemploy a teacher is solely a board's determination and not a proper subject of judicial review." *Id*.  Further, "no decision of a board whether to reemploy or not reemploy a teacher shall be invalidated by the court on any basis, including that the decision was not warranted by the results of any

Case Nos. 2025-T-0021, 2025-T-0022

evaluation or was not warranted by any statement given pursuant to division (G)(2) of this section." *Id.*

{¶55} Thus, "R.C. 3319.11(G)(7) limits judicial review 'to the determination of procedural errors.'" *Jones v. Kent City School Dist. Bd. of Edn.*, 2024-Ohio-2844, ¶ 21. Consequently, the common pleas court "may examine only whether the [school] board complied with the teacher-evaluation procedures required under R.C. 3319.111." *Id.* An appellate court reviews the common pleas court's decision for an abuse of discretion. *Jones v. Kent City School Dist. Bd. of Edn.*, 2023-Ohio-265, ¶ 16 (11th Dist.); *Skilton v. Perry Local School Dist. Bd. of Edn.*, 2002-Ohio-6702, ¶ 19 (11th Dist.).

Scope of Exception

{¶56} The first issue is whether the exception in R.C. 3319.111(C)(2)(d)(i) excused the school board from satisfying the formal-observations requirement in R.C. 3319.111(E).

{¶57} "In assessing the language of a statute, 'a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.'" *State v. Staffrey*, 2025-Ohio-2889, ¶ 18, quoting *State v. Wilson*, 1997-Ohio-35, ¶ 9. "The court 'must "read words and phrases in context and construe them in accordance with rules of grammar and common usage"' in a manner that does 'not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording.'" *Id.*, quoting *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 2012-Ohio-1484, ¶ 18, quoting *State ex rel. Russell v. Thornton*, 2006-Ohio-5858, ¶ 11.

Case Nos. 2025-T-0021, 2025-T-0022

{¶58} Based on our review of the statutory scheme, in context, we disagree with Appellant's reading of the statute. "A 'limited contract' for teachers is a contract for a term of up to five years." *Jones*, 2024-Ohio-2844, at ¶ 3. R.C. 3319.11(E) provides, in relevant part:

> Any teacher employed under a limited contract . . . is, at the expiration of such limited contract, considered reemployed under the provisions of this division at the same salary plus any increment provided by the salary schedule *unless evaluation procedures have been complied with pursuant to section 3319.111 of the Revised Code* and the employing board, acting upon the superintendent's written recommendation that the teacher not be reemployed, gives such teacher written notice of its intention not to reemploy such teacher on or before the first day of June.

(Emphasis added.)

{¶59} Thus, "[a] teacher employed under a limited contract is presumed to be reemployed for another term at the end of the existing contract; the teacher's employment can be nonrenewed only if *the school board has complied with the evaluation procedures in R.C. 3319.111* and the superintendent recommends the teacher's nonrenewal in writing." (Emphasis added.) *Jones* at ¶ 3.

{¶60} "Evaluation procedures" are "the procedures required by the policy adopted pursuant to division (A) of section 3319.111." R.C. 3319.11(A)(1). R.C. 3319.111(A), in turn, requires school boards to "update its standards-based teacher evaluation policy to conform with either the framework for evaluation of teachers adopted under section 3319.112 of the Revised Code or a framework created or adopted by the board." R.C. 3319.112(A), in turn, provides that "[t]he framework shall establish an evaluation system that," among other things, "[r]equires observation of the teacher being evaluated, including at least *two formal observations* by the evaluator of at least thirty minutes each

and classroom walk-throughs . . . ." (Emphasis added.) R.C. 3319.112(A)(3). Finally, R.C. 3319.111(E) provides, in relevant part:

*Notwithstanding division (A)(3) of section 3319.112 of the Revised Code*, the board shall require at least *three formal observations* of each teacher who is under consideration for nonrenewal and with whom the board has entered into a limited contract . . . under section 3319.11 of the Revised Code.

(Emphasis added.)

{¶61} The foregoing provisions demonstrate that formal observations are one component of a teacher evaluation. *See* R.C. 3319.112(A).[1] Generally, a teacher evaluation requires at least *two* formal observations. *See* R.C. 3319.112(A)(3). However, for a teacher under a limited contract who is under consideration for nonrenewal, an evaluation requires at least *three* formal observations. *See* R.C. 3319.111(E).

{¶62} R.C. 3319.111(C)(1) provides:

The board shall conduct an evaluation of each teacher employed by the board at least once each school year, *except as provided in division (C)(2) of this section*. The evaluation shall be completed by the first day of May and the teacher shall receive a written report of the results of the evaluation by the tenth day of May.

(Emphasis added.)

{¶63} One such exception is R.C. 3319.111(C)(2)(d)(i), which provides:

The board may elect not to conduct an evaluation of a teacher who meets one of the following requirements:

The teacher was on leave from the school district for fifty per cent or more of the school year, as calculated by the board.

---

1. Our conclusion is consistent with the Supreme Court of Ohio's interpretation of the prior version of the statutory scheme in *Farmer v. Kelleys Island Bd. of Edn.*, 69 Ohio St.3d 156 (1994): "A proper evaluation under former R.C. 3319.111(A) contains all the elements delineated in R.C. 3319.111(B), including the observation requirements listed in 3319.111(B)(2)." *Id.* at paragraph two of the syllabus.

Case Nos. 2025-T-0021, 2025-T-0022

{¶64} Since formal observations are a component of a teacher evaluation, the exception in R.C. 3319.111(C)(2)(d)(i) necessarily encompasses that component. Accordingly, R.C. 3319.111(C)(2)(d)(i), when satisfied, excuses a school board from conducting three formal observations of a teacher under a limited contract who is under consideration for nonrenewal.

{¶65} The authorities that Appellant cites in support of her argument do not require a different interpretation. For instance, Appellant cites *Koncsol v. Niles*, 105 Ohio App.3d 535 (11th Dist. 1995), for the proposition that "'[a] special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable.'" *Id*. at 539, quoting *Andrianos v. Community Traction Co.*, 155 Ohio St. 47 (1951), paragraph one of the syllabus. *Koncsol* involved conflicting statutes of limitation. Here, there is no conflict between R.C. 3319.111(E) and (C)(2)(d)(i) that we must resolve.

{¶66} Appellant also cites the Supreme Court of Ohio's following statement in *Jones*, 2024-Ohio-2844:

> The plain language of R.C. 3319.111(E) requires three "observations of [the] teacher who is under consideration for nonrenewal." *And this is without exception. See Skilton v. Perry Local School Dist. Bd. of Edn.*, 2004-Ohio-2239, ¶ 11 ("a teacher's medical leave of absence does not excuse a school board from complying with R.C. 3319.111. To hold otherwise would ignore the clear language of R.C. 3319.111").

(Emphasis added.) *Id*. at ¶ 26.

{¶67} The Supreme Court's statement is not dispositive in the present case. *Jones* did not involve the applicability of any of the exceptions in R.C. 3319.111(C)(2); therefore, it is dicta. "'Obiter dictum' is defined as '[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and

therefore not precedential (although it may be considered persuasive).'" *Willowick Bldg. Dept. v. Shoregate Towers NS, LLC*, 2024-Ohio-5650, ¶ 26 (11th Dist.), quoting *Black's Law Dictionary* (12th Ed. 2024).

{¶68} In addition, the case that the Supreme Court cited—*Skilton*—was decided in 2004, which was before the General Assembly enacted R.C. 3319.111(C)(2)(d)(i). In *Skilton*, the school board decided not to renew a teacher's contract less than five months into her approved one-year medical leave of absence. *Id*. at ¶ 2, 5. However, the school board had not completed a second teacher evaluation that the prior version of R.C. 3319.111(A) required. *Id*. at ¶ 6. The school board argued that the requirement should be excused "when the teacher is unavailable for evaluation in the narrow time frame allotted by" the statute. *Id*. at ¶ 9. The Supreme Court rejected that argument, stating that "[i]t is not the role of the courts to question the public policy values of a legislatively enacted statutory scheme"; rather, courts are "limited to applying the statutes as written and passing upon the constitutionality thereof." *Id*. at ¶ 14. The Court noted, however, that if the school board or its amicus curie, the Ohio School Boards Association, "find a statute not to their liking, they may seek recourse at the General Assembly." *Id*. at ¶ 17. It appears the parties did just that—in 2014, the General Assembly enacted the evaluation exception in R.C. 3319.111(C)(2)(d)(i). *See* Sub.H.B. No. 362, 2014 Ohio Laws 112.

{¶69} Appellant further cites 2020 Am.Sub.H.B. No. 197 ("H.B. 197"), which the General Assembly enacted during the COVID-19 pandemic "to allow school districts to forgo any evaluations required under R.C. Ch. 3319 if it was impossible or impracticable to complete them." *Jones* at ¶ 10. According to Appellant, H.B. 197 demonstrates that "the General Assembly knows how to create exceptions to R.C. 3319.111(E) evaluation

requirements." However, Appellant does not quote H.B. 197 or explain how it supports her position. In fact, H.B. 197 made no specific reference to R.C. 3319.111(E). *See id*. at Section 17(M).

Meaning of "Leave"

{¶70} The second issue is whether Appellant was "on *leave* from the school district" pursuant to R.C. 3319.111(C)(2)(d)(i). (Emphasis added.)

{¶71} Appellant contends that "leave" is governed by R.C. 3319.13, which provides, in relevant part:

> Upon the written request of a teacher . . . , a board of education may grant *a leave of absence* for a period of not more than two consecutive school years for educational, professional, or other purposes, and shall grant *such leave* where illness or other disability is the reason for the request. Upon subsequent request, *such leave* may be renewed by the board. Without request, a board may grant similar *leave of absence* and renewals thereof to any teacher . . . because of physical or mental disability, but such teacher may have a hearing on such unrequested *leave of absence* or its renewals in accordance with section 3311.82 or 3319.16 of the Revised Code . . . .

(Emphasis added.)

{¶72} Appellant also cites R.C. 3319.131 (leave of absence for professional growth); R.C. 3319.14 (military leave of absence); R.C. 3319.141 (sick leave); R.C. 3319.142 (personal leave for nonteaching employees); and R.C. 3319.143 (policy of assault leave). According to Appellant, she was not on "leave" under these provisions; rather, she was suspended pursuant to R.C. 3319.16, which provides: "The board may suspend a teacher pending final action to terminate the teacher's contract if, in its judgment, the character of the charges warrants such action."

{¶73} We are mindful that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed

Case Nos. 2025-T-0021, 2025-T-0022

accordingly." R.C. 1.42. However, the statutes that Appellant cites address specific types of "leave" or "leave of absence" under particular circumstances. The exception in R.C. 3319.111(C)(2)(d)(i), by contrast, uses the term "leave" without reference to any statutory authority. Thus, there is no indication that the meaning of "leave" is governed by the cited statutory provisions. In fact, the Supreme Court of Ohio has held that "[t]he General Assembly's use of different words signals a different meaning." *Obetz v. McClain*, 2021-Ohio-1706, ¶ 21.

{¶74} Since there is no applicable statutory definition of "leave," we must determine and apply its common meaning. *See State v. Dorso*, 4 Ohio St.3d 60, 62 (1983) ("any term left undefined by statute is to be accorded its common, everyday meaning"); R.C. 1.42 ("Words and phrases shall be . . . construed according to the rules of grammar and common usage"). "In determining the 'common and ordinary meaning' of words, courts may look to dictionaries." *Athens v. McClain*, 2020-Ohio-5146, ¶ 30.

{¶75} The dictionary defines "leave" as "authorized absence from duty or employment." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/leave (accessed November 21, 2025). Similarly, *Black's Law Dictionary* (12th Ed. 2024), defines "leave" as "extended absence for which someone, often an employee, has authorization." Thus, the common meaning of "leave" is "permitted or authorized absence from work."

{¶76} Appellant contends that she was not "on a permitted absence from work"; rather, "she was ordered not to work because she was suspended." According to Appellant, "leave" must be voluntary and bilateral. We reject Appellant's proposed distinction. The common meaning of "leave" is not limited to a bilateral or voluntary

Case Nos. 2025-T-0021, 2025-T-0022

arrangement. In fact, not even a "leave of absence" under R.C. 3319.13 is so limited: "*Without request*, a board may grant similar leave of absence and renewals thereof to any teacher . . . because of physical or mental disability." (Emphasis added.) As stated, it appears the General Assembly enacted R.C. 3319.111(C)(2)(d)(i) to excuse the evaluation requirement "when the teacher is *unavailable* for evaluation." (Emphasis added.) *Skelton* at ¶ 9. Our reading is fully consistent with that legislative intent: a teacher suspended under R.C. 3319.16 is as equally unavailable as a teacher on a permitted leave of absence under R.C. 3319.13.

{¶77} Appellant cites *Pollett v. Rinker Materials Corp.*, 477 F.3d 376 (6th Cir. 2007), in support of her assertion that suspension is not "leave." In *Pollett*, a panel majority of the Sixth Circuit Court of Appeals determined that the term "excused leave of absence" in an ERISA plan document did not encompass an employee's suspension without pay, reasoning:

> Certainly a suspension and excused leave create an absence from work. But to equate a suspension *without* pay with an excused leave defies common sense. A suspension without pay constitutes a unilateral penalty which an employer imposes upon an employee. In contrast, an excused leave is more akin to a bilateral understanding during which an employer grants an employee permission to be absent from work. During an excused leave the employee suffers no monetary or other penalty and all employment privileges remain intact. An excused absence connotes a lack of punishment while a suspension implies the exact opposite. Merriam-Webster's online dictionary defines "suspend" as "to debar temporarily especially from a privilege." http://www.mw.com/dictionary/suspend. The same dictionary defines "excuse" as "to grant exemption or release." http://www.mw.com/dictionary/excuse. The plain meaning of the phrase "suspended without pay" denotes [the employer] barred [the employee] from employment and all its attendant privileges during the period of his suspension.

(Emphasis in original and footnote omitted.) *Id*. at 378.

Case Nos. 2025-T-0021, 2025-T-0022

{¶78} Notably, one judge dissented, writing that based on the "plain meaning" of "leave of absence" in *Black's Law Dictionary*, an "employer-ordered suspension simply cannot be distinguished from other employer-authorized leaves of absence." *Id*. at 380 (Clay, J., dissenting). However, since *Pollett* involves a federal court's construction of a different term ("excused leave of absence") in a different context (ERISA plan document), we do not find it to be persuasive authority.

{¶79} By suspending Appellant, the school board authorized her to be absent from work pending further action regarding her contract. There is no dispute that Appellant was absent for the entire 2021-2022 school year. Thus, as a matter of law, Appellant was "a teacher who . . . was on leave from the school district for fifty per cent or more of the school year, as calculated by the board." R.C. 3319.111(C)(2)(d)(i). Accordingly, the trial court properly found no procedural errors in the school board's nonrenewal of Appellant's contract.

{¶80} Appellant's second assignment of error is without merit.

{¶81} For the foregoing reasons, the judgments of the Trumbull County Court of Common Pleas are affirmed.


ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgments of the Trumbull County Court of Common Pleas are affirmed.

Costs to be taxed against Appellant.

_____
JUDGE JOHN J. EKLUND

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case Nos. 2025-T-0021, 2025-T-0022